IN THE MATTER OF JOSEPH L. NACKSON, ESQ., CHARGED
WITH CONTEMPT OF COURT.

Argued November 9, 1988—Decided March 29, 1989.

*Frank J. Bucsi,* Senior Assistant Prosecutor, argued the cause for appellant State of New Jersey (*Richard C. Hare,* Warren County Prosecutor, attorney; *John Musarra,* Senior Assistant Prosecutor, on the brief).

*Brian J. Neary* argued the cause for respondent Joseph L. Nackson, Esq.

*Robin Parker,* Deputy Attorney General, argued the cause for amicus curiae Attorney General (*Cary Edwards,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

O'HERN, J.

We are asked to consider whether the attorney involved in this case properly declined to disclose to a grand jury the whereabouts of a client who had consulted the attorney about a fugitive warrant. We find that the balance between the public's right to every person's evidence and the need for confidentiality in the attorney-client relationship has been properly drawn, and affirm the Appellate Division's judgment holding that, in the circumstances of this case, the attorney properly declined to disclose the information.

I

For purposes of this appeal, we accept the facts recited in the State's brief. On November 13, 1978, the New Jersey State Police arrested Mark Meltzer in Hunterdon County on charges of criminal possession of narcotics. At the time of the arrest, Meltzer gave a Hialeah, Florida address. Bail was set by the municipal court in the amount of $10,000, ten percent cash. Shortly thereafter, the defendant posted bail and was released.

On April 29, 1979, a Warren County Grand Jury indicted Meltzer on charges of possession of and possession with an intent to distribute marijuana. On January 25, 1979, a letter appearance was entered on behalf of Meltzer by his attorney, Joseph Nackson. Thereafter, Nackson requested and received several adjournments of arraignment until September 14, 1979.

At that time, Nackson informed the Warren County Prosecutor's Office that Meltzer was in jail in Iowa and as a result could not appear. Consequently, Meltzer's bail was revoked and a bench warrant was issued for his arrest by the Superior Court. A search of the CDS Registry Act records indicated an address for Mark H. Meltzer at 1820 W. 46th Street, Apartment 605, Hialeah Avenue, Chicago, Illinois. Correspondence sent to addresses in both Florida and Chicago was returned "addressee unknown."

Although Nackson had never met with his client, he had spoken with him by telephone and had attempted to arrange a plea agreement for him with the Warren County Prosecutor's Office. Meltzer, aware that he was a fugitive, told his attorney that he would return to New Jersey to answer the pending indictment only if a plea agreement could be worked out. On June 25, 1987, Nackson telephoned the Warren County Prosecutor informing him that Meltzer had "reformed" and was a "legitimate businessman" somewhere in the Chicago area. The prosecutor demanded that Nackson reveal his client's exact whereabouts, but Nackson refused to disclose any further information, claiming an attorney-client privilege.

Nackson was then subpoenaed by the State to appear before the grand jury on July 2, 1987, to obtain information about Meltzer's whereabouts. That day, Nackson moved unsuccessfully before the Law Division to quash the subpoena. The court did rule, however, that Nackson could refuse to answer any questions protected by the attorney-client privilege.

Nackson told the grand jury that he had no knowledge of the whereabouts of his client, but that he recently had telephoned Meltzer somewhere in the Chicago area. Nackson refused to answer five questions, asserting the attorney-client privilege:

(1) What number did you call when you called him back [during the week of June 29, 1987]?

(2) Did you advise your client that in the opinion of the Warren County Prosecutor's Office, he was a fugitive from justice?

(3) Have you advised him that he should comply with the law?

(4) Can you tell the Grand Jury what his occupation is?

(5) Can you tell the Grand Jury by whom he is employed at the present time?

The prosecutor then filed an order to show cause why Nackson should not be held in contempt. The Law Division found that the responses to questions two and three were indeed protected by the attorney-client privilege. However, the court required Nackson to answer the remaining questions concerning his client's telephone number, occupation, and employer. In the Law Division's view, the client's whereabouts and employer were not confidential information protected by the attorney-

client privilege because such nondisclosure would "obstruct justice." The Appellate Division granted Nackson's motion for leave to appeal and a stay of the proceedings.[1] Reversing the judgment of the trial court, the Appellate Division held that if there were "less intrusive means for obtaining information necessary to return an indictment against the client of an attorney, those means must be pursued to avoid any infringement on the cherished Sixth Amendment and state constitutional right to counsel." 221 *N.J.Super.* 187, 206–07 (1987).

We granted the State's petition for certification. 110 *N.J.* 290 (1988). We also granted leave for the Office of the Attorney General to participate as *amicus curiae.*

## II

The right to counsel in criminal proceedings is enshrined in the federal and state constitutions. *U.S. Const.,* Amend. VI; *N.J. Const.* of 1947 art. I, para. 10. The attendant privilege protecting the confidentiality of information furnished by a client to his attorney is similarly well-established in our law, *In re Kozlov,* 79 *N.J.* 232 (1979), and is now embodied in Rule 26 of the New Jersey Rules of Evidence and *N.J.S.A.* 2A:84A–20. The relationship between attorney and client is deeply rooted in the necessity that the public, for many of whom the law is but a collection of complexities, seek the recourse and trust of lawyers.

The privilege is codified not only in our statutes and rules of evidence but also in our rules of ethical conduct. *Rule* 1:14. For example, Disciplinary Rule 4–101 of the Disciplinary Rules of the Code of Professional Responsibility in certain circumstances protected "information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely

---

[1] Meltzer was indicted later for bail-jumping by the grand jury notwithstanding Nackson's unanswered questions.

to be detrimental to the client." DR 4–101(A). Those disciplinary rules now have been replaced by the Rules of Professional Conduct, but the principles remain substantially the same.

Viewing attorneys as ministers of justice, we have imposed on lawyers the disciplinary obligation of maintaining the confidences of their clients:

> The ethical obligation of every attorney to preserve the confidences and secrets of a client is basic to the legitimate practice of law. Such an obligation is necessary for several reasons. Persons who seek legal advice must be assured that the secrets and confidences they repose with their attorney will remain with their attorney, and their attorney alone. Preserving the sanctity of confidentiality of a client's disclosures to his attorney will encourage an open atmosphere of trust, thus enabling the attorney to do the best job he can for the client.
>
> ·[*Reardon v. Marlayne, Inc.*, 83 *N.J.* 460, 470 (1980).]

So grave is the necessity for full and open disclosure in the case of criminal representation that the court has equated it "with an intimacy equal to that of the confessional." *State v. Sugar*, 84 *N.J.* 1, 13 (1980).

"None of this is to say that the privilege, while exceedingly important, is sacrosanct." *In re Kozlov, supra*, 79 *N.J.* at 242. There may be circumstances so grave, as Chief Justice Hughes outlined them in *Kozlov*, that the privilege must yield to the most fundamental values of our justice system. *Id.* at 243. In the current case we need to address three questions: first, whether an address is to be regarded as a confidence by a client or as a communication related to the representation; second, whether the so-called "crime or fraud" exception to the privilege requires disclosure of the address; and finally, whether the circumstances are such that the privilege must yield to other fundamental values of our justice system. We will treat the client's telephone number and employer as a form of address.

### III

### A.

■ Our Court has previously held that in some circumstances the whereabouts of a client may be protected by the attor-

ney-client privilege. *Fellerman v. Bradley,* 99 *N.J.* 493 (1985). In *Fellerman* we held:

> We perceive no sound reason why the communication that consists of, or includes, a client's address should not, at least in a case such as this, be governed by the same considerations that obtain as to other communications that are accorded the privilege. We therefore decide the issues involved not on the basis of whether an address is, or may ever be, the subject of a protected confidential communication between a client and attorney but on the basis of the purposes for which the privilege exists and the reasons for its assertion in the context of the particular case.
>
> [*Id.* at 501–2.]

Thus, whether a client's address may be considered a confidence protected by the attorney-client privilege necessarily depends on the surrounding circumstances in which the address was given.

In *Fellerman,* we noted the familiar exceptions to the privilege based on the "crime or fraud" exception, *N.J.S.A.* 2A:84A–20(2)(a), *Evid.R.* 26(2)(a), or the requirements of DR 4–101(C)(2)–(3) that an attorney disclose confidences when required by law, court order, or when necessary to prevent the client from committing a crime. Considering the balance of factors involved and in light of the surrounding circumstances, we found disclosure of the client's address necessary to prevent injustice. 99 *N.J.* at 507. Particularly important was the fact that there was a continuing relationship between client and counsel, and the court sought the address to effectuate the terms of an agreement made by the client to pay for an expert's expenses. *Id.* at 496–97. Within the circumstances of *Fellerman,* withholding the address of the client would indeed be directly assisting a client in perpetrating a fraud on the court and "would permit a party 'to mock justice' by ignoring both a judgment and a separate enforcement order of the Superior Court" that he pay an expert's fee. *Id.* at 509.

## B.

The question whether the "crime or fraud exception" requires disclosure in the circumstances of this case is a close

call. The "crime or fraud" exception is not limited, of course, to the actual perpetration of an offense. *See In re Yaccarino*, 101 *N.J.* 342, 383–84 (1985) ("[T]he concept of fraud is sufficiently broad to encompass deceitful and deceptive acts that might not otherwise warrant criminal or civil sanctions."). The client here was under an affirmative duty to keep the court informed of his whereabouts. The terms of his bail release specifically required him to do so. Hence, the State argues that the client had no right to ask the attorney to do that which the client could not do—conceal his whereabouts and in effect "mock justice."

The argument is compelling. Lawyers are not tools of injustice. We agree that it would be wrong for an attorney to "blackmail" the Prosecutor's Office by withholding a fugitive client's phone number, unless an amenable plea bargain is arranged. *See In re Doe*, 117 *Misc.*2d 197, 456 *N.Y.S.*2d 312, 314–15 (Co.Ct.1982) (bail-jumper's counsel, who moved for a dismissal, was required to reveal his client's whereabouts to a grand jury). Our conceptual resistance to recognizing the privilege here stems from the near certainty that the client is a wrong-doer. Unlike a suspect accused of crime, who must be presumed to be innocent, we are virtually positive that this client has done something wrong by jumping bail. It is almost a contempt in the face of the court. However, the essential question facing this Court is whether such a client by his actions forfeits the right to seek counsel.

We are unable to agree that the continuing nature of the crime of bail-jumping warrants a different substantive treatment of the privilege. Justice Kennedy, while sitting on the Ninth Circuit Court of Appeals, noted that "[t]he privilege encourages persons to seek advice as to future conduct. But so important is full disclosure that the law recognizes the privilege even if the advice is sought by one who has already committed a bad act." *United States v. Hodge and Zweig*, 548 *F.*2d 1347, 1355 (9th Cir.1977), *disapproved o.g., In re Grand Jury Subpoenas*, 803 *F.*2d 493 (9th Cir.1986). But, as Justice Kennedy

pointed out, "a *quid pro quo* is exacted for the attorney-client confidence: the client must not abuse the confidential relation by using it to further a fraudulent or criminal scheme." *Id.* at 1355.

Courts that have addressed the question of disclosure have uniformly held that a determination of whether a client's whereabouts must be disclosed will depend on an analysis of the facts of the case and the nature of the communication involved. *In re Stolar,* 397 *F.Supp.* 520, 524 (S.D.N.Y.1975). In deciding whether the "crime or fraud" exception applies, the relevant factor to consider is whether the client consulted with the attorney in order (1) to aid the client "in the commission of any crime"; (2) to enable the client "to avoid any criminal investigation or proceeding pending at the time the advice was given"; or (3) to assist the client to "avoid lawful process in any proceeding pending at the time the advice was given." *In re Grand Jury Subpoenas Served Upon Field,* 408 *F.Supp.* 1169, 1173–74 (S.D.N.Y.1976). Undoubtedly, it can be often a close question whether "the legal service was sought or obtained to aid the client in the planning or perpetration of a crime or a tort." *In re Selser,* 15 *N.J.* 393, 416 (1954) (Heher, J., dissenting).

An example of instances in which the whereabouts of a client may need protection is the matrimonial field. *See Taylor v. Taylor,* 45 *Ill.App.*3d 352, 3 *Ill.Dec.* 961, 359 *N.E.*2d 820 (App. Ct.1977) (attorney need not disclose whereabouts of wife who feared injury from husband). In the delicate and explosive situations that often occur in marital litigation, the ability of attorneys to handle their clients' affairs otherwise could be "seriously undermine[d]." *Id.* at 358, 3 *Ill.Dec.* at 965, 359 *N.E.*2d at 824. Of course, the privilege is not a warrant to play games with courts. In *In re Jacqueline F.,* 47 *N.Y.*2d 215, 417 *N.Y.S.*2d 884, 889, 391 *N.E.*2d 967, 972 (1979), the New York Court of Appeals held that the lawyer's client "cannot have her

cake and eat it too" by appealing a custody decision while requiring her lawyer to conceal her whereabouts.

The argument can be made here, too, that Meltzer wants to "have his cake and eat it too," and that the attorney's advice promoted the continuing criminal violation of the defendant. But in this case advice and communication arguably were given for the purpose of ending that criminal violation. Unlike *Fellerman, supra,* the client had not induced the court to enter an order in disposing of an issue in the case to the client's benefit. Every defendant has a right to bail.

The case is similar to the troubling case in Florida in which a person consulted an attorney and told the attorney that "[m]y name is 'so-and-so' and I think I may have been involved in the accident described in the paper." *Baltes v. Doe I,* 57 *U.S.L.W.* 2268 (Fla. Cir.Ct. Oct. 13, 1988) (No. CL–88–1145–AD). The client asked the attorney to communicate with the authorities in an effort to negotiate a plea to resolve the matter, but instructed the attorney not to reveal his identity. *Ibid.* The prosecution there, as here, argued that the client is involved in a continuing crime, and that the attorney had "a duty not to participate in allowing it to continue," (the continuing crime being a failure to comply with the Florida statute requiring disclosure of information concerning an accident). *Ibid.* The Florida court held that the attorney-client privilege protects an attorney from disclosing information that would lead to identifying the client, and that the "crime or fraud" exception did not apply because the substantive violation occurred only when the driver was at the scene of the accident and ended when he left the scene. *Ibid.* Similarly, commentators have stated that "while the question is not free from doubt, it appears that the appropriate and prevailing view is that the attorney need not and should not disclose information received from his client which concerns continuing aspects or effects of past criminal conduct." Callan & David, Professional Responsibility and the Duty of Confidentiality: Disclosure of Client Misconduct in an Adversary System, 29 *Rutgers L.R.* 332, 365 (1976).

■ Meltzer broke the law when he failed to appear in court for the required appearance. As noted, he was indicted by the grand jury for this bail-jumping offense, a violation of *N.J.S.A.* 2C:29–7. Although Meltzer may be the most undeserving of clients, innocent people are sometimes suspected of crime. They should be able to consult counsel.

We are satisfied, then, that in the circumstances of this case the "crime or fraud" exception did not remove the communication of the client's address from the scope of privilege. However, we must address whether other principles applicable to the privilege may require disclosure.

## C.

■ As we noted in our discussion of *Fellerman v. Bradley, supra,* 99 *N.J.* 493, the privilege is not absolute. Like other privileges, it must in some circumstances yield to the higher demands of order. *See, e.g., United States v. Nixon,* 418 *U.S.* 683, 710, 94 *S.Ct.* 3090, 3108, 41 *L.Ed.*2d 1039, 1065 (1974) (claim of executive privilege must yield to defendant's interest in fair trial because "[w]hatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth." (footnote omitted)). Our law is set forth in *In re Farber,* 78 *N.J.* 259 *cert. den.,* 439 *U.S.* 997, 99 *S.Ct.* 598, 58 *L.Ed.*2d 670 (1978), where we held that a newspaper reporter's privilege to keep an informant's confidence must yield to a defendant's right to a fair trial. *Cf. In re Richardson,* 31 *N.J.* 391, 401 (1960) (noting that the "matter is truly one of balance," and requiring an attorney to disclose identity of fee-payer). In addition to the requirement that a need to pierce the privilege be established, it must be shown "to the satisfaction of 'the trial judge, by a fair preponderance of the evidence including all reasonable inferences, that * * * the information * * * *could not be secured from any less intrusive source.'* "

*In re Kozlov, supra,* 79 *N.J.* at 244 (quoting *In re Farber, supra,* 78 *N.J.* at 276–77).

The difficulty with this record is that the Law Division perceived the client's whereabouts to be outside the scope of the attorney-client privilege because of the "crime or fraud" exception. Consequently, no record was made to "the satisfaction of the trial judge" that would have enabled the court to resolve the balance of interests. *Kozlov, supra,* 79 *N.J.* at 244. Mr. Nackson's attorney proffered that the State could have obtained the telephone numbers by an interstate warrant served on the Chicago-area telephone utility. We agree with the prosecutor that this is an unsatisfactory suggestion. In both instances the client's privacy interests are equally implicated.

Rather, the question might be asked concerning what efforts had been made through the F.B.I. or state law-enforcement authorities to update information on Meltzer. In such situations, the prosecution can first follow other means for pursuing a fugitive, such as searching F.B.I. computer files and conducting license searches and other investigative techniques. Outside references indicate that the prosecutor actually did make such efforts to locate Meltzer, but that information was not included in the record of appeal. The grand jury also was prepared to take additional testimony from a Chicago attorney (allegedly a blood relative of Meltzer who knew of his whereabouts), and to seek further information about a detainer on a motor vehicle violation presumably from the Chicago area.

If all reasonable efforts appeared futile, then a court would have first to balance the gravity of the public's interest in obtaining information against the client's legitimate expectations of confidentiality in imparting his whereabouts to his counsel who sought trial continuances for him. If the public's interest tips the balance against the client's expectation of confidentiality, then a court must determine if this need outweighs a right to seek the assistance of counsel. *See Com-*

*monwealth v. Maguigan*, 511 *Pa.* 112, 511 *A*.2d 1327 (1986) (an attorney was compelled to disclose a client's whereabouts who violated bail on charges of rape, statutory rape, corrupting the morals of a minor, indecent assault, and indecent exposure).

In this case such a balancing was not done because the Law Division regarded the information as non-privileged. Nevertheless, no further purpose will be served by a remand. Meltzer has since been arrested in Florida and taken to the Warren County Prosecutor's Office. There is also no doubt that Nackson was "sincere and well intentioned" in his actions. *In re Callan*, 66 *N.J.* 401, 407 (1975). It takes no small measure of courage to stand alone before a grand jury and insist on upholding the requirements of the profession in the face of a contempt charge. Nackson was not obstructive, but in fact furnished the grand jury with relevant information about his client, the nature of his contacts, and his representation.[2] He drew the line between the public's need for every person's evidence and the protection of his client's confidences where he believed his ethical obligation required it to be drawn. Nackson's conduct before the grand jury was at least reasonable.

We note that Nackson's counsel has requested that we adopt a rule of practice in the exercise of our supervisory power over grand juries, *N.J.S.A.* 2A:73A–3, to require prior court approval before an attorney is summoned before a grand jury. *See United States v. Klubock*, 639 *F.Supp.* 117 (D.Mass.1986), *aff'd*, 832 *F*.2d 649 (1st Cir.), *aff'd en banc*, 832 *F*.2d 664 (1st Cir.1987) (adopting rule requiring court approval prior to subpoenaing attorneys before grand jury). We have no sense from this record that this is anything but an isolated instance of

---

[2]Nackson had previously filed an affidavit with this Court stating that after speaking with his client's father, he could now release Meltzer's business and home telephone numbers. However, Nackson was informed that both numbers had been disconnected without a forwarding number. Furthermore, Nackson stated that he has not spoken with Meltzer since 1987, and has no information concerning Meltzer's current telephone number, occupation or whereabouts.

client circumstances unlikely to recur. We see no current need for rulemaking. The principles of law are quite clear.

We agree with the court below that this record falls short of demonstrating either a substantive ground for piercing the privilege (on the basis that the address was not a client confidence or that it had been lost by the "crime or fraud" exception) or procedural compliance with the requirements of *In re Farber, supra,* 78 *N.J.* 259, prerequisites to piercing the privilege in the interests of justice.

The judgment of the Appellate Division is affirmed.

*For affirmance* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal*—None.