233 N.J. Super. 488 (1989)
559 A.2d 447
IN RE ORDER COMPELLING PRODUCTION FOR IN CAMERA REVIEW OF RECORDS OF JOYCE L. MARAZITI, ESQ., LAW GUARDIAN FOR THE MINOR CHILDREN, L.P., K.P. AND E.P., APPELLANTS. STATE OF NEW JERSEY, PLAINTIFF,
v.
E.P.,[1] DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 3, 1989.
Decided May 26, 1989.
*489 Before Judges KING, BRODY and SKILLMAN.
Joyce L. Maraziti, Assistant Deputy Public Defender, argued the cause for appellants, (Alfred A. Slocum, Public Defender, attorney; Joyce L. Maraziti, of counsel; Joyce L. Maraziti and James A. Louis, Deputy Public Defender, on the brief).
Linda B. Kenney argued the cause for respondent (Kenney, Kenney, Gross & McDonough, attorneys; Linda B. Kenney, of counsel and Patricia M. Quigley, on the brief).
Peter N. Perretti, Jr., Attorney General, filed a brief on behalf of New Jersey Division of Youth and Family Services (Ann Marie Seaton, Deputy Attorney General, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal requires us to decide whether a criminal defendant has a constitutional right to an in camera review of the notes of communications between his accusers and their attorney to determine whether they contain statements which are inconsistent with their accusations against him. The issue arises in the context of charges of sexual assault against *490 defendant by his minor daughters, who subsequently have had confidential communications with a court appointed law guardian representing them in civil proceedings initiated by the Division of Youth and Family Services (DYFS). We conclude that defendant has no constitutional right to breach the confidentiality of the attorney-client privilege under these circumstances.
On October 12, 1987, defendant's wife, Linda, disclosed to DYFS a letter from her daughter, L.P., which asserted that defendant had made her "go to his room" and "do things [she] wasn't supposed to do." Thereafter, DYFS, in conjunction with local law enforcement officials, conducted a series of interviews with the defendant, Linda, L.P. and another of defendant's daughters, K.P.L.P., then age twelve, recounted how defendant forced her to have sexual intercourse and oral sex with him over a period of three or four years. K.P., then age fifteen, revealed that defendant rubbed "his crotch" against her thigh when she was ten or eleven years old.
Defendant admitted having sexual intercourse with two of his daughters from a previous marriage. He also admitted rubbing his penis against L.P.'s vagina, but he denied any penetration. Defendant denied having any sexual contact with K.P.
Defendant was indicted by a Monmouth County Grand Jury on February 23, 1988. The first and second counts of the indictment charge defendant with aggravated sexual assault and sexual assault upon L.P., contrary to N.J.S.A. 2C:14-2a and N.J.S.A. 2C:14-2b. The fourth count charges defendant with endangering the welfare of L.P., contrary to N.J.S.A. 2C:24-4a. The third and fifth counts charge defendant with sexual assault upon K.P. and endangering the welfare of K.P. As a condition of bail, defendant moved from the family home and agreed to have no contact with his children.
According to DYFS, Linda repeatedly questioned the truthfulness of L.P. and K.P.'s allegations against defendant. In fact, Linda, who was assisting in the preparation of the defense, *491 seemed to be hampering the criminal investigation by restricting the prosecutor's access to her daughters. Moreover, Linda rebuffed DYFS' efforts to secure counseling or therapy for the girls. At some point, both daughters recanted their allegations against defendant.
Subsequently, DYFS filed a verified complaint seeking to place L.P., K.P. and defendant's son, E.P., under its care and supervision. The complaint was accompanied by an order to show cause assigning a law guardian for the minor children.[2] Upon her appointment, the law guardian sent a letter to the minors which stated in part as follows:
I would like to introduce myself. I am the court appointed attorney who will represent you in the Court action involving D.Y.F.S. I am called your law guardian. My job is to speak with you and find out what your wishes are and tell those wishes to the Judge. I must also protect your interest in the Court case. I work for you  not your parents  and not D.Y.F.S. Anything you and I discuss is CONFIDENTIAL, which means I cannot discuss it with anyone without your permission. [Emphasis added.]
A hearing was held on September 23, 1988 which resulted in an order placing L.P., K.P. and E.P. under DYFS' temporary care and supervision, ordering a family evaluation and restraining defendant from contacting the minors or visiting the family residence.
Subsequently, there was a flurry of correspondence between the law guardian and defendant's counsel, who represents him in both the criminal and civil actions. The law guardian advised defendant's counsel that she would not permit her to have contact with the children, except with the law guardian's consent. Thereafter, defendant's counsel requested "memorializations or copies of all interviews with the daughters ... concerning the alleged criminal contact on them by their father." The *492 law guardian responded that "[n]o materials will be provided to you as such matters are privileged."
On October 11, 1988, defendant filed motions in the criminal case to compel DYFS and the law guardian to release all records relating to interviews with L.P. and K.P. Defendant's motion seeking release of the law guardian's notes was supported by his attorney's affidavit which stated in pertinent part:
[O]n information and belief, the victims have on several occasions made many statements indicating that the original complaints to the police were untruthful.
This would be exculpatory material held by a governmental agency to which defendant is entitled under Brady. Therefore, defendant requests that the... Law Guardian ... be compelled to release any and all records of interviews with the victims along with any notes of unmemorialized conversations with the victims wherein they indicated the original complaints to the police were lies.
In a reply brief, defendant agreed to an in camera inspection of the records to determine whether they contain "any contradictory statements made by the girls which would affect their credibility at trial."
The trial court decided the motions in a one paragraph letter which stated:
This will advise you that I have again reviewed [State v. Cusick, 219 N.J. Super. 452 (App.Div. 1987) and Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)] and I am satisfied that the defendant's request to compel the Division of Youth and Family Services to release all records including interviews with the victims is warranted, and further, that the Office of the Public Advocate/Law Guardian should release all records concerning interviews with victims; therefore, all records are to be forwarded to this Court for an "in camera" inspection.
Accordingly, an order was entered on January 19, 1989, directing the law guardian to "release all records concerning interviews with the victims to the court for in-camera review to determine whether or not defendant's attorney is entitled to same."
We granted the law guardian's motion, on behalf of the children, for leave to appeal from this order and for a stay *493 pending appeal.[3]

I
The threshold issue in this appeal is whether the law guardian and defendant's children occupy an attorney-client relationship in which their communications are protected by the attorney-client privilege.
The law guardian was appointed to represent the children pursuant to N.J.S.A. 9:6-8.23(a), which provides that:
Any minor who is the subject of a child abuse or neglect proceeding under this act must be represented by a law guardian to help protect his interests and to help express his wishes to the court.
In addition, N.J.S.A. 9:6-8.21(d) states that:
"Law Guardian" means an attorney admitted to the practice of law in this State, regularly employed by the Department of Public Advocate, and designated under this act to represent minors in alleged cases of child abuse or neglect.
The fact that a law guardian must be admitted to the practice of law and is designated "to represent" children in the child abuse or neglect proceedings reflects a legislative intention that the law guardian will occupy the role of the attorney for the children. This conclusion is reinforced by other sections of Title 9 which specifically authorize a law guardian to perform the responsibilities of an attorney for a litigant. Thus, a law guardian is authorized to apply for an adjournment, N.J.S.A. 9:6-8.48, and to file a motion to set aside, modify or vacate any order issued in the course of the proceedings. N.J.S.A. 9:6-8.59.
The conclusion that a law guardian occupies an attorney-client relationship with the alleged abused or neglected children is also supported by New York case law interpreting similar legislation enacted in that state. See Bentley v. Bentley, 86 *494 A.D.2d 926, 448 N.Y.S.2d 559, 560 (App.Div. 1982); see also Child Neglect Laws in America, 9 Fam.L.Q. 1, 31-33 (Table VI), 58-59 (1975) (reporting that as of 1975 more than half the states had adopted statutes authorizing the appointment of counsel for children involved in abuse or neglect proceedings).
Because a law guardian serves as the attorney for the alleged abused or neglected children, the attorney-client privilege applies to any communications made in the course of that representation. In re Advisory Opinion No. 544 of New Jersey Supreme Court Advisory Comm. on Professional Ethics, 103 N.J. 399, 404 (1986). "[T]he primary justification and dominant rationale" for the attorney-client privilege is "the encouragement of free and full disclosure of information from the client to the attorney." Fellerman v. Bradley, 99 N.J. 493, 498 (1985). The opportunity for such "free and full disclosure" of information has particular importance to abused or neglected children, due to their vulnerability and their vital interest in the outcome of proceedings which may alter or even terminate their relationship with their parents. Therefore, any communications between defendant's minor children and the law guardian relating to the acts of abuse defendant allegedly committed upon them are subject to the protection of the attorney-client privilege.[4]

*495 II
The attorney-client privilege, as codified in N.J.S.A. 2A:84A-20 and Evidence Rule 26, extends to all "communications between lawyer and his client in the course of that relationship and in professional confidence...." The only three statutory exceptions to the privilege are
(1) "a communication in the course of legal service sought or obtained in aid of the commission of a crime or a fraud," Evid.R. 26(2)(a); see also RPC 1.6(b) and RPC 1.6(c)(1);
(2) "a communication relevant to an issue between parties all of whom claim through the client, regardless of whether the respective claims are by testate or intestate succession or by inter vivos transaction," Evid.R. 26(2)(b); and
(3) "a communication relevant to an issue of breach of duty by the lawyer to his client, or by the client to his lawyer." Evid.R. 26(2)(c); see also RPC 1.6(c)(2).
Defendant concedes that none of the statutory exceptions to the attorney-client privileges apply to his children's communications with their attorney.
Nevertheless, defendant argues, relying primarily upon Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), that disclosure of those communications for in camera inspection is required because his children's attorney-client privilege must yield to his due process rights under the United States Constitution. In Ritchie, a defendant charged with the rape of his daughter sought the disclosure of the records of a Pennsylvania agency assigned the statutory responsibility, comparable to DYFS, of investigating suspected cases of child abuse and neglect. The agency's records included a verbatim statement by the victim to a counselor. The governing legislation provided that the agency's records were confidential, but would be "made available to ... [a] court of competent jurisdiction pursuant to a court order." Id. at 43 n. 2, 107 S.Ct. at 994 n. 2. The Court held that defendant was entitled, under the Due Process Clause of the Fourteenth Amendment, to an in camera review of the agency's records to determine whether they contained any information relevant to his defense. Id. at *496 56-58, 107 S.Ct. at 1001-02; see also State v. Cusick, 219 N.J. Super. 452, 455-463 (App.Div. 1987).
However, the Court in Ritchie carefully noted that the agency's records, although ordinarily confidential, were not the subject of any statutory privilege which would protect them from disclosure in judicial proceedings:
This is not a case where a state statute grants CYS the absolute authority to shield its files from all eyes. Cf. 42 Pa Cons Stat § 5945.1(b) (1982) (unqualified statutory privilege for communications between sexual assault counselors and victims). Rather, the Pennsylvania law provides that the information shall be disclosed in certain circumstances, including when CYS is directed to do so by court order. Pa Stat Ann, Title 11, § 2215(a)(5) (Purdon Supp 1986). Given that the Pennsylvania Legislature contemplated some use of CYS records in judicial proceedings, we cannot conclude that the statute prevents all disclosure in criminal prosecutions. In the absence of any apparent state policy to the contrary, we therefore have no reason to believe that relevant information would not be disclosed when a court of competent jurisdiction determines that the information is "material" to the defense of the accused. [480 U.S. at 57-58, 107 S.Ct. at 1001-02; footnote omitted; emphasis in original.]
We are satisfied that the Due Process Clause, as interpreted in Ritchie, does not require the disclosure to a criminal defendant of communications protected by the attorney-client privilege. The Supreme Court has recognized that constitutional provisions relating to the conduct of criminal proceedings must be construed in light of established common law rules of evidence. Thus, in Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Court held that the Confrontation Clause of the Sixth Amendment is not violated by the admission of hearsay statements "where the evidence falls within a firmly rooted hearsay exception." Applying this principle, the Court has held that the Confrontation Clause is not violated by the admission of evidence pursuant to the co-conspirator exception to the hearsay rule. Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 2782-2783, 97 L.Ed.2d 144 (1987); see also Mattox v. United States, 156 U.S. 237, 243-244, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895) (expressing the view that the introduction of evidence pursuant to the dying declaration exception to the hearsay rule does not violate a criminal defendant's constitutional rights). In fact, the Court stated in unequivocal *497 language only last term, that "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Taylor v. Illinois, 484 U.S. 400, 108 S.Ct. 646, 653, 98 L.Ed.2d 798, 811 (1988).
The attorney-client privilege is an even more "firmly rooted" part of the law of evidence than the co-conspirator exception to the hearsay rule upheld against constitutional attack in Bourjaily. Indeed, the Supreme Court has recognized that:
The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. [Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).]
See also Trammel v. United States, 445 U.S. 40, 51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980); Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). Therefore, we conclude that a defendant's due process right to an in camera inspection of records which are subject by statute to disclosure to a court does not imply that there is a similar right to the disclosure of communications protected by the attorney-client privilege. Cf. Washington v. Texas, 388 U.S. 14, 23 n. 21, 87 S.Ct. 1920, 1925 n. 21, 18 L.Ed.2d 1019 (1967) ("Nothing in this opinion should be construed as disapproving testimonial privileges, such as ... the lawyer-client [privilege]").
This conclusion is supported by Commonwealth v. Kyle, 367 Pa.Super. 484, 533 A.2d 120 (1987), appeal den. 518 Pa. 617, 541 A.2d 744 (1988), where the court held that a defendant accused of rape was not entitled to obtain in camera inspection of the files of the psychologist who treated the victim. The court noted that:
Unlike the statutory conditional privilege at issue in Ritchie, the Pennsylvania law in this case grants an absolute privilege for communications between a licensed psychologist and a client. [533 A.2d at 125.]
*498 The Court analogized the psychologist-client relationship to the attorney-client relationship:
[T]he psychologist-client privilege is modeled after the attorney-client privilege, an absolute privilege which has been repeatedly sustained under constitutional attack. Like the attorney-client privilege, the psychologist-client privilege protects an interest extrinsic from the truth-finding process. [Id. at 125-126; citations omitted.]
Accordingly, the court concluded that defendant was not entitled to in camera inspection of the victim's communications to her psychologist.
[T]he purpose of the psychologist-client privilege is to aid in the effective treatment of the client by encouraging the patient to disclose information fully and freely without fear of public disclosure. We deem this purpose and the underlying considerations to be of paramount concern. Subjecting the confidential file to in camera review by the trial court (as well as the appellate courts and staff members) would jeopardize the treatment process and undermine the public interests supporting the privilege. [Id. at 131.]
See also People v. Foggy, 121 Ill.2d 337, 118 Ill.Dec. 18, 521 N.E.2d 86 (1988), cert. den. ___ U.S. ___, 108 S.Ct. 2044, 100 L.Ed.2d 628 (1988).
Defendant argues that because there are certain exceptions to the attorney-client privilege recognized in New Jersey, the privilege is not "absolute" and therefore under Ritchie "in camera review is constitutionally mandated in order to determine whether the records in fact are material to the defense." Defendant notes that in addition to the statutory exceptions to the privilege, the New Jersey courts have recognized there may be other circumstances which are "so grave ... that the privilege must yield to the most fundamental values of our justice system." In re Nackson, 114 N.J. 527, 532 (1989); see also In re Kozlov, 79 N.J. 232, 243 (1979). However, such circumstances have been found only where an attorney possesses specific information communicated by the client which is unavailable from less intrusive sources, such as the client's identity or address, and even then the moving party must show that the public interest in disclosure outweighs the client's legitimate expectation in confidentiality. In re Nackson, supra, 114 N.J. at 538-539; In re Kozlov, supra, 79 N.J. at 243-244.
*499 The circumstances of this case are significantly different from those involved in Nackson and Kozlov. Defendant does not seek information pertinent to his defense which he is unable to obtain from any other source. Rather, defendant seeks to obtain his children's privileged communications with their attorney solely for the purpose of attacking their credibility. As a foundation for this application, defendant relies upon the fact that the children subsequently recanted their charges against him. Defendant, assuming that his children also told their attorney that their original charges were not truthful,[5] argues that he is entitled to such statements "to rebut the prosecution's likely attempt to dismiss or minimize evidence of recantation."[6] Indeed, defendant suggests that any statements made by the minors to their attorney in the belief that they would remain confidential would be especially persuasive to the jury in resolving issues of credibility.
We are convinced that disclosure of privileged communications solely for this purpose would seriously undermine the attorney-client relationship by discouraging "free and full disclosure of information from the client to the attorney." Fellerman v. Bradley, supra, 99 N.J. at 498. Rather than being able to assure her clients at the outset of any representation that "anything you and I discuss is confidential," the law guardian would have to advise them that their communications could be subject to in camera review by a court and, if that review revealed any apparent inconsistencies with their prior statements, *500 possible disclosure to third parties including the alleged abusive parent. In the face of such advice, the clients would be hesitant to confide in their attorney, and the attorney would not acquire the full understanding of the facts required to provide the clients effective legal advice and representation. See In re Shargel, 742 F.2d 61, 63 (2nd Cir.1984); Macey v. Rollins Environmental Services (N.J.), Inc., 179 N.J. Super. 535 (App. Div. 1981).[7] Hence, the possible use for impeachment purposes of the children's communications to the law guardian is not a circumstance "so grave" that the attorney-client privilege "must yield" to other more "fundamental values of our justice system." In re Nackson, supra, 114 N.J. at 532; cf. State v. Boiardo, 83 N.J. 350 (1980); State v. Boiardo, 82 N.J. 446, 467-469 (1980). Consequently, we conclude that the "limited exceptions to the privilege" recognized in New Jersey, Fellerman v. Bradley, supra, 99 N.J. at 502,[8] do not make attorney-client communications subject to disclosure to the court or to litigants simply upon a showing of the materiality required for disclosure of the social service records involved in Ritchie.
Defendant also argues, relying upon Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), that he is entitled under the Confrontation Clause of the Sixth Amendment to an in camera inspection of the law guardian's notes of any interviews with his children to determine whether they contain anything which may be useful to impeach their charges against him. However, a four member plurality of the Supreme Court held in Ritchie that the Confrontation Clause does not "require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." 480 U.S. at 53, 107 S.Ct. at 999. Rather, it is solely "a trial *501 right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." Id. at 52, 107 S.Ct. at 999 (emphasis in original).[9]
Moreover, even if the Confrontation Clause included rights to pretrial discovery, those rights would not extend to the compelled disclosure of communications protected by the attorney-client privilege. As previously noted, the Confrontation Clause has been interpreted in light of established common law rules of evidence. Bourjaily v. United States, supra. Those rules include the attorney-client privilege, which is "of broader and deeper significance than [the] statute relating to the confidentiality of juvenile records [involved in Davis v. Alaska]." Mills v. State, 476 So.2d 172, 176 (Fla. 1985), cert. den. 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986).
Finally, we reject defendant's argument that an in camera review of the law guardian's notes is required to determine whether any of her communications with her clients were outside the attorney-client privilege. This case does not involve an attorney who occupies a position such as an in house corporate counsel, where an in camera review may be required to determine whether communications relevant to the case "were made within [the attorney's] professional capacity as a lawyer." United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 563 (App.Div. 1984). The law guardian was appointed to represent the children in connection with DYFS's complaint alleging that they were sexually abused by defendant. Since the criminal charges against defendant are based on these same *502 allegations, any relevant communications between the law guardian and the children would necessarily be protected by the attorney-client privilege.
Accordingly, the order requiring an in camera inspection of the law guardian's records of her interviews with the alleged victims is reversed.
NOTES
[1] Since the victims of the alleged sexual assaults committed by defendant are his minor daughters, he is referred to by his initials only.
[2] Although E.P. is not alleged to have been the victim of any sexual abuse, DYFS' complaint seeks to place all three of defendant's minor children under its care and supervision. Thus, the law guardian represents E.P. as well as defendant's minor daughters.
[3] DYFS did not appeal from the order requiring in camera review of its records. However, it filed a letter brief supporting the law guardian's position that her notes of interviews with the alleged victims are protected by the attorney-client privilege. The prosecutor submitted a letter stating that he takes no position with respect to the appeal.
[4] Even if the Legislature did not intend a law guardian to occupy the role of an attorney in child abuse proceedings, the communications between the law guardian and defendant's minor children still would be protected by the attorney-client privilege. This court has recognized that where there is mistaken representation of the existence of a confidential attorney-client relationship and the purported client reasonably relies on that representation by communicating privileged information, the communication is protected by the attorney-client privilege. State v. Tapia, 113 N.J.Super, 322, 330 (App.Div. 1971); see also McCormick, Evidence, § 88 (3d ed. 1984). The law guardian's representation, on "State of New Jersey" stationery, that she was their "court appointed attorney" and that "[a]nything you and I discuss is CONFIDENTIAL," would provide a sufficient basis for finding such a de facto attorney-client relationship.
[5] This assumption is speculative. In light of the victim's alleged recantations, we asked the law guardian at oral argument whether her clients would waive their attorney-client privilege with respect to their communications with her. The law guardian indicated that her clients understood they could waive the privilege and had expressly declined to do so.
[6] We note that defendant already has access to other statements by the alleged victims which may be used for the same purpose, including a psychologist's report which clearly sets forth that both L.P. and K.P. have recanted their initial allegations. In addition, the record suggests that DYFS' files may contain references to recantations.
[7] Indeed, the lack of fully informed advice from the law guardian could result in the minors giving less accurate testimony at defendant's criminal trial.
[8] Similar exceptions are recognized in every other jurisdiction. See 8 Wigmore, Evidence, § 2292 n. 2 (McNaughton rev. ed. 1961 and 1988 supp.).
[9] Defendant urges that we construe the Confrontation Clause of Article I, section 10 of the New Jersey Constitution more broadly than the plurality of the Supreme Court construed the Confrontation Clause of the United States Constitution in Ritchie. However, we are convinced that disclosure of the law guardian's records would not be required even under the broader interpretation of the Confrontation Clause urged by the dissenters in Ritchie. Therefore, we have no occasion to decide whether there are any circumstances in which the Confrontation Clause of the New Jersey Constitution might be interpreted more broadly than the Confrontation Clause of the United States Constitution.