# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0512-18T1

STATE OF NEW JERSEY IN THE
INTEREST OF J.T.

_____

Submitted October 15, 2019 – Decided December 19, 2019

Before Judges Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FJ-09-0585-13.

Weiner Law Group LLP, attorneys for appellant (Jay V. Surgent, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, on the brief).

PER CURIAM

    Defendant J.T., adjudicated delinquent as a seventeen-year-old of what, if

charged as an adult, would have been first-degree aggravated sexual assault of

a seven-year-old girl,[1] V.M. (Victoria), appeals the denial of his petition for

post-conviction relief (PCR) following an evidentiary hearing.[2]  On appeal, he

argues:

> POINT I
>
> THE COURT BELOW ERRED IN DENYING THE PETITION FOR POST-CONVICTION RELIEF AS DEFENDANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND BY ARTICLE I, PARAGRAPH 10 OF THE NEW JERSEY CONSTITUTION DUE TO THE LACK OF INVESTIGATION AS TO [VICTORIA'S] MOTIVE TO BRING FALSE CHARGES AGAINST DEFENDANT BEING THAT SHE HAD HEARD FROM NEIGHBORS THAT DEFENDANT HAD SEXUALLY ABUSED THREE OTHER GIRLS.
>
> POINT II
>
> DEFENDANT WAS DENIED HIS RIGHT TO EFFECTIVE TRIAL COUNSEL DUE TO THE LACK OF INVESTIGATION AS TO DEFENDANT'S COUSIN [JOHN] AND HIS CONVINCING

---

[1]  Although the juvenile delinquency complaint asserts Victoria was seven years old, she testified she was six at the time the assaults occurred.  The discrepancy has no impact on our decision.

[2]  We use pseudonyms throughout this memo to protect the privacy of the parties and preserve the confidentiality of these proceedings.  R. 1:38-3(d)(10), (11).  Our use intends no disrespect or familiarity.

A-0512-18T1

[VICTORIA] TO TESTIFY FALSELY AGAINST DEFENDANT AND ALLEGED COCAINE USE BY DEFENDANT'S COUSIN [JOHN].

POINT III

DEFENDANT WAS DENIED HIS RIGHT TO EFFECTIVE TRIAL COUNSEL DUE TO THE LACK OF INVESTIGATION OF [VICTORIA'S] FATHER['S] . . . ALLEGED COCAINE USE, ALLEGED INDEBTEDNESS TO DEFENDANT, AND ALLEGED FIST FIGHT WITH DEFENDANT.

POINT IV

DEFENDANT WAS DENIED HIS RIGHT TO EFFECTIVE TRIAL COUNSEL DUE TO THE FAILURE TO INVESTIGATE THE LACK OF AN ATTIC TO UNDERMINE THE CREDIBILITY OF [VICTORIA].

POINT V

DEFENDANT WAS DENIED HIS RIGHT TO EFFECTIVE TRIAL COUNSEL DUE TO THE FAILURE TO INVESTIGATE AND INTERVIEW [D.P. (DANIEL)].

POINT VI

DEFENDANT WAS DENIED HIS RIGHT TO EFFECTIVE TRIAL COUNSEL DUE TO THE FAILURE TO INVESTIGATE [J.B.R. (JENNIFER)] OR [M.P. (MELISSA)].

POINT VII

3

DEFENDANT WAS DENIED HIS RIGHT TO EFFECTIVE TRIAL COUNSEL DUE TO THE FAILURE TO INVESTIGATE [VICTORIA'S] MOTHER.

POINT VIII

DEFENDANT WAS DENIED HIS RIGHT TO EFFECTIVE TRIAL COUNSEL DUE TO THE FAILURE TO INVESTIGATE/QUESTION [VICTORIA] AS TO HER MENTAL HEALTH HISTORY.

POINT IX

THE COURT BELOW ERRED IN DENYING THE PETITION FOR POST-CONVICTION RELIEF AS DEFENDANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND BY ARTICLE I, PARAGRAPH 10 OF THE NEW JERSEY CONSTITUTION AND DENIED OF HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS DUE TO THE FAILURE TO PROPERLY CROSS-EXAMINE THE ALLEGED VICTIM [VICTORIA] IN VIOLATION OF HIS SIXTH AMENDMENT CONFRONTATION CLAUSE RIGHTS AND ARTICLE I, PARAGRAPH 10 RIGHTS UNDER THE NEW JERSEY CONSTITUTION.[3]

---

[3] The evidentiary hearing addressed trial counsel's failure to investigate claims as set forth in Points I through VIII in his merits brief. It did not encompass defendant's claims regarding the cross-examination of Victoria.

We are unpersuaded by any of these claims and affirm.

When she was thirteen years old, Victoria told her friend D.P. (Daniel) that she had been "raped." It was not until she was seventeen years old, however, that she reported to police that defendant assaulted her on four occasions in late 2001 or early 2002,[4] after he was hired as her tutor. During the bench trial, Victoria testified that she waited ten years after the sexual assault occurred to come forward to the police because she "was trying to see why [she] was so depressed and why a lot of things in [her] life wasn't working out." She further testified that she "had anxiety . . . was depressed all the time [and] had [obsessive-compulsive disorder]." Victoria also told Detective Son at the Hudson County Prosecutor's Unit that she decided to disclose the sexual assault "because a year ago, she had heard from her neighbor [J.B.R. (Jennifer)] that [defendant] had sexually abused [three] other girls and she did not want [defendant] to do this to anyone else." During Detective Son's trial testimony, he said he relied on the allegations made by Victoria and "the former downstairs neighbor" to conduct an interview of defendant.

---

[4]  The trial court found that the incidents occurred "late in . . . 2001 but more likely than not . . . in early January . . . 2002[.]"

A-0512-18T1

Victoria testified to four assaultive incidents that took place in the building where defendant's apartment was located across the hall from the apartment in which Victoria lived with her parents. At trial, she informed that one of the incidents took place "all the way upstairs" in an attic area.

Most of defendant's failure-to-investigate claims center on Victoria's motive and impetus to accuse him. As with his other PCR claims, to establish that his counsel was ineffective, defendant must satisfy the test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). He must first show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687). He must also prove that he suffered prejudice due to counsel's deficient performance. Strickland, 466 U.S. at 691-92. Defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58.

In the certification supporting his PCR petition, defendant averred counsel failed to investigate Victoria's statement to police that she belatedly disclosed the assaults "because a year ago, she had heard from her neighbor[, Jennifer,] that [defendant] had sexually abused [three] other girls and she did not want

6

[defendant] to do this to anyone else." After hearing the testimony of defendant and his trial counsel at the evidentiary hearing, the PCR judge determined that trial counsel's reasoning in "not want[ing] to open Pandora's box and . . . expose his client to additional charges that the State had not yet sought or give these three individuals the opportunity or idea that they should proceed against his client with other charges" was "well within . . . the appropriate standard of representation by the attorney[.]"

We agree with the PCR judge's determination that counsel's choice not to investigate the allegations by the three women did not amount to ineffective assistance of counsel. We review defense counsel's actions under the familiar standards synopsized by the Court in State v. Arthur, 184 N.J. 307, 318-19 (2005) (alterations in original):

> In determining whether defense counsel's representation was deficient, "'[j]udicial scrutiny . . . must be highly deferential,' and must avoid viewing the performance under the 'distorting effects of hindsight.'" State v. Norman, 151 N.J. 5, 37 (1997) (quoting Strickland, 466 U.S. at 689). Because of the inherent difficulties in evaluating a defense counsel's tactical decisions from his or her perspective during trial, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S.

7

at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

In determining whether defense counsel's alleged deficient performance prejudiced the defense, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings." Id. at 693. Rather, defendant bears the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also State v. Harris, 181 N.J. 391, 432 (2004).

Viewing defendant's trial counsel's conduct under that lens, defendant fails to satisfy the first Strickland-Fritz prong. An attorney is not obliged to conduct an investigation where "a defendant has given counsel reason to believe . . . [it] would be fruitless or even harmful[.]" Strickland, 466 U.S. at 691. Whether Victoria's motive to disclose defendant's assaults was based on allegations by the three women—whether truthful or false—the trial judge based his adjudication largely on the detailed testimony Victoria gave about the four attacks, not on her motive to come forward. Counsel's decision not to inject those allegations into the trial did not render him ineffective.

Defendant also contended counsel failed to investigate or question Jennifer or M.P. (Melissa) about a conversation they had wherein Jennifer encouraged Melissa to report that defendant "had raped [Melissa] at a family

barbeque in the summer of 2012"; charges were never brought in connection with that alleged incident. The PCR judge did "not find [defendant's] testimony credible with regards to the fact that he asked his attorney to investigate any of these things."

While we do "not defer to a PCR court's interpretation of the law; a legal conclusion is reviewed de novo," State v. Nash, 212 N.J. 518, 540-41 (2013), "[o]ur standard of review is necessarily deferential" to the factual findings of a PCR court so long as the findings "are supported by sufficient credible evidence in the record," id. at 540. "Those findings warrant particular deference when they are 'substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Rockford, 213 N.J. 424, 440 (2013) (alteration in original) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)).

The PCR judge did not find credible defendant's testimony that he asked his counsel to investigate the communications between Jennifer and Melissa. Given our deference to that finding, defendant fails to establish the first Strickland-Fritz prong.

We similarly defer to the PCR judge's finding: "I do not find the testimony . . . of [defendant] credible. There was nothing ever mentioned to the

[defense] attorney . . . that [John] convinced them to falsely accuse [defendant]." The judge also found that defendant was not credible in alleging his cousin John convinced Victoria to falsely accuse defendant. The judge based her findings on defendant's statement to police during the investigation denying "[a]ny problems with [defendant's] cousins or any complaints about [his] family or [his] cousin's family."

Likewise, the judge did not find credible defendant's contentions that Victoria's father's animosity against defendant was fueled by the father's: cocaine use, indebtedness to defendant; fistfight with defendant; or termination from his job because of defendant's actions. The judge did "not find . . . the testimony of [defendant] credible that there was anything that happened between [Victoria's father and defendant] or that he ever shared any information [with] his [defense] attorney . . . with regard to that." The judge discerned that defendant, in his statement to police, did not mention a fight with Victoria's father even though the alleged timing of the fight would have caused it to be "fresh in his mind at the time he spoke with [police]." Instead, when speaking of Victoria's household family, defendant told police that

> they've always been friends with me and even though they haven't spoke[n] to my family. Her dad, like every single time I friggin' find him drunk downstairs . . . I

put him upstairs and stuff. It's not like – I mean why
would they say something against me? I have no idea.

The judge also noted defendant did not mention the fight during his trial testimony. Moreover, the judge did not find credible defendant's testimony that he informed his attorney "that there was an altercation between" defendant and Victoria's father.

Based on the PCR judge's credibility findings, to which we defer because they are supported by the record, we determine defendant failed to meet the first Strickland-Fritz prong regarding his contentions that counsel failed to investigate John or Victoria's father.

The judge also rejected defendant's argument that his trial counsel was ineffective by failing to investigate whether there was an attic or access to a roof area where one of the assaults allegedly occurred, finding defendant's allegations incredible. Once again, the judge turned to defendant's statement to police, played during the trial, during which he admitted that there was "an upstairs portion in the building that sometimes people hang out in" and where homeless people sleep. Defendant admitted he had been to that area and, in fact, kept a bicycle there; and that, when he "was a kid," he had gone to the roof through a door which pushed up and threw "water balloons at cars and people crossing the park[.]"

Given defendant's acknowledgment that there existed an area where the assault, as described by Victoria, could have taken place, we conclude trial counsel was not ineffective for failing to visit or photograph that area. Trial counsel was constrained by defendant's statement admitting there was such an area.

Although we have focused on the first Strickland-Fritz prong, it is clear from the record that defendant has failed to establish the second prong of that test with regard to all his arguments; that is, he has not demonstrated a "reasonable probability" that counsel's purported deficient performance affected the outcome. See Fritz, 105 N.J. at 58.

When, as in this case, a defendant claims that his or her trial attorney "inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (citing R. 1:6-6). "[B]ald assertions" of deficient performance are insufficient to support a PCR application. Ibid.; see also State v. Porter, 216 N.J. 343, 356-57 (2013) (reaffirming these principles in evaluating which of a defendant's various PCR claims warranted an evidentiary hearing). In other words, a defendant must

identify what the investigation would have revealed and demonstrate the way the evidence probably would have changed the result. Fritz, 105 N.J. at 64-65 (citing United States v. Rodgers, 755 5.2d 533, 541 (7th Cir. 1985)).

Defendant has made nothing more than bald assertions as to what the investigations would have revealed. Indeed, he has not performed any of the investigations which he complains his counsel neglected.

Defendant argues that interviewing the three women he allegedly abused "might have corroborate[d] defendant's theory (and defense) that [Victoria] had made up the story about defendant. If the interviews of these three witnesses were negative to . . . defendant, trial counsel did not have to present such evidence[.]" (Emphasis added). But he has not proffered a statement from John, Victoria's father, Jennifer or Melissa. Nor has he offered any pictures of the "upstairs area" of the crime scene, or any other results of an investigation to establish that he was prejudiced by trial counsel's failure to so do. The repeated mantra in his merits brief that "there was no downside" to performing the investigations is insufficient to establish his claim that he was prejudiced by counsel's failure to investigate.

So too, defendant has failed to establish any resultant prejudice from trial counsel's failure to investigate Daniel, Victoria's mother or Victoria's mental

health history. When questioned during the evidentiary hearing, defendant acknowledged that Victoria told Daniel that he sexually assaulted her and "that's all [Daniel] could have testified to." The PCR judge noted Victoria testified that she told Daniel she was "raped" by defendant but did not "go[] into anything past that because [she] was embarrassed." In his merits brief, defendant contends, "[a]gain, as with the other potential witnesses, trial counsel should have at least had an investigator interview [Daniel] to determine whether he would be a helpful witness for . . . defendant." But without a proffer of some specific information that Daniel could have supplied, defendant falls short of his burden of proof. We note trial counsel testified at the PCR hearing that Daniel "indicated that he didn't believe that there was any truth behind the allegation of three young ladies having been molested" by defendant. Even if those allegations were introduced and deemed relevant, Daniel's opinion would have been inadmissible. State v. Tung, 460 N.J. Super. 75, 101-02 (App. Div. 2019) (recognizing a witness may not offer an opinion on another witness's credibility).

Defendant does not offer any reason why Victoria's mother should have been interviewed. As the PCR judge found, there is no evidence Victoria's mother had any evidence helpful to defendant.

14                                                                                          A-0512-18T1

Defendant also faults his trial counsel for failing to move "for release and in camera review" of Victoria's therapy records. (Emphasis omitted). He makes no argument, however, that such a motion would be successful. State v. Van Dyke, 361 N.J. Super. 403, 412 (App. Div. 2003).

Any communications between Victoria and her psychologist were privileged. N.J.S.A. 45:14B-28 and N.J.R.E. 505 both provide, in part:

> The confidential relations and communications between and among a licensed practicing psychologist and individuals . . . in the course of the practice of psychology are placed on the same basis as those provided between attorney and client, and nothing in this act shall be construed to require any such privileged communications to be disclosed by any such person.

As we recognized in State v. L.J.P., however,

> "Like other privileges, it must in some circumstances yield to the higher demands of order." Matter of Nackson, 114 N.J. 527, 537 (1989) (referring to the attorney-client privilege). Such demands may include a defendant's right to a fair trial. Id. However, the requisite foundation for piercing the privilege involves a showing of legitimate need for the shielded evidence, its materiality to a trial issue, and its unavailability from less intrusive sources. Id.; (quoting In re Kozlov, 79 N.J. 232, 243-44 (1979)).
>
> [270 N.J. Super. 429, 439 (App. Div. 1994).]

An in camera review is appropriate if: "1) there is a legitimate need to disclose the protected information; 2) the information is relevant and material to the issue before the court; and, 3) the party seeking to pierce the privilege shows by a 'preponderance of the evidence' that 'no less intrusive source' for that information exists." Id. at 440 (quoting United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 564 (App. Div. 1984)).

Absent a prima facie showing that defendant has met the three prongs of the Kozlov test, disclosure of therapy records should not be ordered. Kinsella v. Kinsella, 150 N.J. 276, 306-07 (1997). The Kinsella court clearly cautioned against the disclosure of a patient's psychological records, noting:

> Courts should be mindful that, although New Jersey's psychologist-patient privilege is modeled on the attorney-client privilege, the public policy behind the psychologist-patient privilege is in some respects even more compelling. Like the attorney-client privilege, the psychologist-patient privilege serves the functional purpose of enabling a relationship that ultimately redounds to the good of all parties and the public. The psychologist-patient privilege further serves to protect an individual's privacy interest in communications that will frequently be even more personal, potentially embarrassing, and more often readily misconstrued than those between attorney and client. Made public and taken out of context, the disclosure of notes from therapy sessions could have devastating personal consequences for the patient and his or her family, and the threat of such disclosure could be wielded to unfairly influence settlement negotiations or the course

16

of litigation. Especially in the context of matrimonial litigation, the value of the therapist-patient relationship and of the patient's privacy is intertwined with one of the most important concerns of the courts—the safety and well-being of children and families. Therefore, only in the most compelling circumstances should the courts permit the privilege to be pierced.

[Id. at 329-30.]

Defendant has not offered any evidence to meet Kozlov's tripartite requirements. As such, he has not established his entitlement to the records or any prejudice from his trial counsel's failure to move for a review of same.

We determine defendant's argument that counsel was ineffective for failing to properly cross-examine Victoria, during which "he violated two fundamental tenets of cross-examination: 1) do not ask questions unless you know the answer; and 2) control the witness's answers with your questions," to be without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2). Cross-examination was competently performed. Even if it was not, which we do not determine, a defendant's "complaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy of representation by counsel." Fritz, 105 N.J. at 54 (quoting State v. Williams, 39 N.J. 471, 489 (1963)). "Mere improvident strategy, bad tactics or mistake do not amount to ineffective assistance of counsel unless, taken as a whole, the trial

was a mockery of justice." <u>State v. Bonet</u>, 132 N.J. Super. 186, 191 (App. Div. 1975).  The simple fact that a trial strategy fails does not necessarily mean that counsel was ineffective.  <u>State v. Bey</u>, 161 N.J. 233, 251 (1999) (citing <u>State v. Davis</u>, 116 N.J. 341, 357 (1989)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION