203 N.J. Super. 91 (1985)
495 A.2d 1347
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RUDOLPH VASKY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 1985.
Decided June 24, 1985.
*94 Before Judges MORTON I. GREENBERG and O'BRIEN.
Lawrence Friedman argued the cause for appellant.
Caryn Spindell Granofsky, Assistant Prosecutor, argued the cause for respondent (George L. Schneider, Essex County Prosecutor, attorney; Marc J. Friedman, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Defendant appeals from two convictions of contempt in the face of the court upon which he was fined $250 for the first conviction and sentenced to serve 15 days in jail on the second conviction. We affirm the convictions but reverse and remand as to the sentence imposed on the second conviction.
The events out of which the contempt convictions arose occurred during the course of a hearing before the law division on defendant's appeal from his conviction of an offense in a municipal court. The appeal was de novo on the record made below. See R. 3:23-8(a). Although defendant had filed his appeal pro se, he was represented at the hearing by an experienced attorney. Counsel had filed a brief on behalf of defendant in which he asserted that the record below was totally unintelligible and that defendant had been deprived of his right to have Judge McDonald called as a witness. The Law Division judge hearing the appeal had directed the attorneys[1] to address their arguments to those two issues first. At this point defendant interrupted the proceedings. When directed by the trial judge to sit down, and by his attorney to be quiet, defendant refused. The trial judge recessed the court.
When court reconvened, the trial judge said to defendant:
Mr. Vasky, stand up. Mr. Vasky, one of the difficulties that the municipal court has, as best I can understand, in reading this transcript, was constant interruption by yourself in connection with the proceedings before the municipal *95 court. I am not going to permit that to occur. I tell you now, sir, there's a sergeant from the sheriff's department sitting in this courtroom at my instruction. If you utter one word out of turn, if you act at all out of turn, your bail will immediately be revoked and you will be jailed. Take your seat, take your seat, take your seat.
Notwithstanding this admonition, defendant persisted and then stated, "I am discharging my attorney. I'm going pro se on this." To his attorney, defendant said:
Mr. Friedman, you are hereby discharged. Mr. Friedman, you are discharged, you understand? You are discharged. I am going pro se on this, because I have a constitutional right to defend myself. I have a constitutional right to subpoena a witness.
This was followed by an extensive confrontation between defendant and the trial judge. Notwithstanding the judge's entreaties to defendant to be quiet he continued his conduct and another recess was taken.
On this occasion when the court reconvened, the trial judge stated:
Mr. Vasky, please stand. Mr. Vasky, I find that your action in refusing to obey the court's order is in direct contempt in the face of the Court. I find you guilty of that contempt. Mr. Vasky, I'll hear you on the punishment for that contempt.
Defendant then spoke extensively on his constitutional rights and his right to defend himself, stating that no sentence should be imposed since he had not done anything wrong. At one point he said:
Judge, the question whether there is to be a penalty  you have stated no reason of finding  Well, you stated reasons which are (indiscernible). These reasons are not bona fide reasons. This is nonsense. You got insulted because I did not obey your assistant when he told me to shut up. You have no right to tell someone to be quiet because I'm in a court of law, and in a court of law every defendant has the right to defend himself. Whatever I acted, I acted in the belief that you violated my constitutional rights. That's the reason why I raised my voice; that's the reasons why I called you names; because you had violated my constitutional rights.
On this first contempt conviction the trial judge imposed a fine of $250 and advised defendant of his right to appeal.
Since defendant pursued the same type of conduct, the trial judge again cautioned him:
I say this to you, Mr. Vasky, once more. I want you to take your seat and I do not want you to interrupt this Court. If you do, if you stand up, if you *96 interrupt this Court's proceeding, you give me no other alternative but to again contemplate holding you in contempt. If you wish to abide by that  I know you object to it, sir, but I'm saying that this is what the Court compels, and I'm asking you to take your seat.
Defendant persisted in his conduct, saying that he would obey the judge and not interrupt provided the judge would guarantee that if his municipal court conviction was affirmed he would not be jailed pending appeal. The trial judge refused to give such a guarantee. Furthermore, the trial judge refused to accept defendant's contention that he wished to discharge his attorney and argue the case pro se. Defendant then began shouting and making extreme statements, i.e.:
I will not give up my constitutional right. Shoot me; shoot me in the head. I will not give up my constitutional rights.
The trial judge cleared the courtroom, again held defendant in contempt and offered defendant the opportunity to speak as to the sentence to be imposed for this contempt. Defendant continued his position, saying things such as, "This is silly. There cannot be a finding of guilty because I did nothing that would warrant a finding of guilty." On the second conviction of contempt the trial judge imposed a sentence of 15 days in jail. After conferring with his attorney, defendant agreed to remain seated without interruption, saying: "Yes, I will, but I want to say on the record, I do this under protest."
Argument on the municipal appeal continued uninterrupted. When argument was completed, the trial judge reversed and remanded the case to the municipal court pursuant to R. 3:23-8(a) because of the confusing and unintelligible transcripts. The trial judge then heard defendant's counsel with respect to the two contempt convictions, refused to change the convictions or the sentences imposed and directed that defendant be arrested and incarcerated. The court also refused counsel's application that defendant be permitted to perform community service or to serve his sentence in the evenings and on weekends.
At about 4 p.m. on January 10, 1985, defendant was incarcerated. On the morning of January 11, 1985, he was transferred *97 to the Essex County Correctional Center in Caldwell. That morning his attorney again made application to the trial judge to reconsider the contempt convictions and sentences imposed. The trial judge questioned the attorney's appearance on behalf of his client since he had not spoken on behalf of defendant during the colloquy between the trial judge and defendant leading to the contempt convictions. However, the attorney had continued to argue the appeal at the trial judge's direction. The trial judge first made a suggestion that the attorney might be applying to have defendant committed for observation, but when the attorney made such an application the trial judge denied it, concluding that defendant was not dangerous to himself nor to others. Counsel then sought a stay of the incarceration which was denied. His application for bail pending appeal was also denied pursuant to R. 2:5-1(a), since a notice of appeal had not yet been filed. Later that day a handwritten notice of appeal was filed by the attorney, and the trial judge fixed bail in the amount of $1,000[2] which was posted in cash.
Pursuant to R. 1:10-1, the trial judge prepared an order of contempt reciting the facts and containing a certification by him that he saw or heard the conduct constituting the contempt. In the order, the judge noted that defendant had filed his notice of appeal from the municipal court conviction, upon which he had been sentenced to 120 days incarceration, pro se, but that he was represented by counsel in the Law Division. The trial judge also noted that when he called the first recess after the tape-recording machinery had been turned off, he heard defendant shout to the court, "You are a scumbag" and "You are all scumbags." The judge explained that he did not find defendant guilty of contempt for making those statements but "they are included in these findings of fact in order that the aura in the *98 Courtroom may be more clearly demonstrated." An "Order to Detain/Remand" prepared by the court clerk and signed by the trial judge recites the conviction of contempt of court and imposition of a term of 15 days at the Essex County Jail Annex and that there be "no credit for good behavior."
A contempt committed in the presence of a judge "may be adjudged summarily by the judge without notice or order to show cause." R. 1:10-1. There is no question that a defendant may be convicted of contempt of court for disrupting proceedings. See Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971); State v. Gonzalez, 134 N.J. Super. 472, 475 (App.Div. 1975), mod. 69 N.J. 397 (1975). "[A] criminal trial, in the constitutional sense, cannot take place where the courtroom is a bedlam. * * * A courtroom is a hallowed place where trials must proceed with dignity." Illinois v. Allen, 397 U.S. 337, 351, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353, 363 (1970) (Douglas, J. separate opinion). "To allow the disruptive activities of a defendant * * * to prevent his trial is to allow him to profit from his own wrong. The Constitution would protect none of us if it prevented the courts from acting to preserve the very process that the Constitution itself prescribes." Id. at 350, 90 S.Ct. at 1064, 25 L.Ed.2d at 362-363. (Brennan, J., concurring). See also Codispoti v. Pennsylvania, 418 U.S. 506, 513-514, 94 S.Ct. 2687, 2692-2693, 41 L.Ed.2d 912, 920 (1974).
Moreover, a court may summarily convict and impose punishment for contempt, without any provision for notice or an opportunity to be heard, provided that the contemptuous conduct occurred in the immediate presence of the judge and was personally witnessed by him and that the conduct created "an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public" that if "not instantly suppressed and punished, demoralization of the court's authority would follow." Cooke v. United States, 267 U.S. 517, 536, 45 S.Ct. 390, 395, 69 L.Ed. 767, 773 (1925); In re Oliver, 333 U.S. 257, 275, 68 S.Ct. *99 499, 508, 92 L.Ed. 682, 695 (1948). However, since the power to punish directly inevitably diminishes the procedural due process accorded to the alleged contemnor, the power must be permitted only where necessary. Harris v. United States, 382 U.S. 162, 165, 86 S.Ct. 352, 354, 15 L.Ed.2d 240, 242 (1965). See also In Re Yengo, 84 N.J. 111, 122 (1980), cert. den. 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981).
N.J.S.A. 2A:10-1, dealing with contempts, provides in pertinent part:
The power of any court of this State to punish for contempt shall not be construed to extend to any case except the:
(a) Misbehavior of any person in the actual presence of the court;
........
(c) Disobedience or resistance by any court officer or by any party, juror, witness or any person whatsoever to any lawful writ, process, judgment, order or command of the court.
In construing this statute, the court in In re Callan, 122 N.J. Super. 479, 494 (Ch.Div. 1973), aff'd 126 N.J. Super. 103 (App.Div. 1973), rev'd on other grounds 66 N.J. 401 (1975), noted:
A "contempt" is a disobedience of the court by acting in opposition to its authority, justice and dignity. It comprehends any act which is calculated to or tends to embarrass, hinder, impede, frustrate, or obstruct the court in the administration of justice, or which is calculated to or has the effect of lessening its authority or its dignity; or which interferes with or prejudices parties during the course of litigation, or which tends otherwise to bring the authority or administration of the law into disrepute or disregard. In short, any conduct is contemptible which bespeaks of scorn or disdain for a court or its authority.
Summary contempt convictions are reviewable on the facts as well as the law on appeal. R. 2:10-4; N.J.S.A. 2A:10-3; In re Clawans, 69 N.J. Super. 373, 378 (App.Div. 1961), certif. den. 36 N.J. 296, cert. den. 370 U.S. 905, 82 S.Ct. 1250, 8 L.Ed.2d 401 (1962). In In re Spann Contempt, 183 N.J. Super. 62 (App.Div. 1982), we construed R. 2:10-4 to require us to try the matter de novo on the record both as to guilt and punishment. The only limitation on our power, beyond that applicable to the trial court, is that we may not impose a greater sentence than that which the trial court imposed. In re Spann Contempt, 183 N.J. Super. at 65; see Parsippany Troy Hills Education *100 Assoc., 140 N.J. Super. 354 (App.Div. 1975); State v. DeBonis, 58 N.J. 182 (1971). The nature of our review stands "as a bulwark against an attenuation of the rights of an accused." See In re Education Assoc. of Passaic, Inc., 117 N.J. Super. 255, 259 (App.Div. 1971), certif. den. 60 N.J. 198 (1972).
Essentially defendant contends that his conduct was not willful or deliberate, but rather the result of a sudden violent mental agitation. Even when a person commits contempt which directly insults the court, it must still be proven that he acted with criminal intent. The contemnor must be accorded the opportunity to attempt to show that he did not possess the requisite mens rea, but this may be done at the summary hearing. See In re Hinsinger, 180 N.J. Super. 491, 497 (App.Div. 1981). While it is true that the trial judge did not specifically say that defendant had the opportunity to dispel the presence of criminal intent, it is evident that he was afforded that opportunity. The judge couched that opportunity in terms of inviting defendant to address himself to the sentence to be imposed. The wide ranging remarks by defendant on both occasions addressed themselves primarily to his guilt and his intent, rather than to the sentence to be imposed. Furthermore, counsel for defendant was given the opportunity to address both the convictions and the sentences imposed. That defendant possessed the requisite intent is clearly demonstrated by the fact that he composed himself and ceased his interruptions of the court after the jail sentence was imposed.
We recognize that defendant faced a 120-day jail term as a result of his municipal court conviction. We also note the substantial amount of bail fixed pending his appeal of that conviction. Notwithstanding this apprehension and concern by defendant, he persistently refused to obey the lawful directions of the judge to sit down and be quiet. While we may agree with defendant that he had the right to discharge his attorney and to proceed pro se, it is evident in this case that the trial judge's refusal to recognize the discharge of his attorney was in an effort to protect defendant's rights, since the attorney had *101 fully prepared and briefed the arguments to be addressed to the court. The reason for the tirade by defendant is not altogether clear, except his manifest concern that he not be incarcerated. We also observe that many other litigants and spectators were in the courtroom during defendant's outbursts. The courtroom had to be cleared by the trial judge to deal with defendant's contumacious conduct.
We have carefully reviewed the record in this case and the findings of fact made by the trial judge, which we accept as our own. We find that the persistent refusal of defendant to accede to the directions of the trial judge constituted contempt in the face of the court and warranted his conviction for contempt. The second offense is all the more egregious since notwithstanding his being adjudged in contempt and a fine imposed, he continued his contumacious conduct in the face of the court. We therefore affirm both convictions. On the first conviction we impose a fine of $250 plus costs.
As noted, our duty on an appeal from a summary conviction for contempt is to try the matter de novo on the trial record upon the law and the facts, towards the end of adjudicating both guilt and punishment. See N.J.S.A. 2A:10-3 and R. 2:10-4. Obviously the imposition of a fine for the first conviction was totally appropriate. Moreover, in light of defendant's continued disregard of the judge's orders, it was appropriate that a more substantial sanction be imposed for his second contempt conviction. However, we are not certain that 15 days incarceration without any time off for good behavior was necessary, particularly where the judge refused to permit service of the sentence on weekends or nights. No findings were made by the trial judge as to aggravating and mitigating factors or as to the financial needs of defendant and his family. During the course of one of her arguments, the assistant prosecutor said defendant has a long record of disrupting courts while they are in session, disrupting his own proceedings, and disrupting other people's proceedings. Furthermore, the prosecutor stated that defendant had a substantial criminal *102 record involving possession of weapons, firearms offenses and assault on a police officer (which was the subject matter of the municipal appeal in which this contempt occurred). On the other hand, defendant's attorney said that defendant had never been convicted of a crime. We believe the trial judge should have inquired into defendant's background to ascertain whether or not he was guilty of previous contumacious conduct and if he had a criminal record before the imposition of even this minimal jail term.
The trial judge may have had knowledge as to these factors, but he made no findings to guide us in our de novo review of the sentence. The sentence imposed may be totally justified, but we cannot reach that conclusion on this record. We therefore remand to the trial judge for reconsideration of the sentence imposed in order that an inquiry may be made as to defendant's prior conduct and criminal record. Inquiry shall also be made as to his financial needs and those of his family and how they may be affected by his incarceration, to the end that consideration be given to service of a sentence on weekends and nights. We do not retain jurisdiction.
NOTES
[1] Another attorney appeared on behalf of the codefendant who had also appealed her conviction in the municipal court.
[2] The trial judge agreed that upon reversal and remand of the municipal court conviction the $2,500 cash bail previously posted with the municipal court should be returned to defendant.