250 N.J. Super. 125 (1991)
593 A.2d 802
IN THE MATTER OF RUTH ANN MANDELL, AN ATTORNEY-AT-LAW OF THE STATE OF NEW JERSEY.
Superior Court of New Jersey, Appellate Division.
Argued June 12, 1991.
Decided July 8, 1991.
*127 Before Judges LONG, R.S. COHEN and STERN.
Kevin H. Marino, Director of Litigation, argued the cause for appellant (Wilfredo Caraballo, Public Advocate, attorney, Kevin H. Marino and John V. Jacobi, Assistant Deputy Public Advocate, on the brief).
Linda K. Danielson, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney, Linda K. Danielson of counsel and on the brief).
Lawrence S. Lustberg argued the cause for amicus curiae, The Association of Criminal Defense Lawyers Of New Jersey (Crummy, Del Deo, Dolan, Griffinger & Vecchione, attorneys, Lawrence S. Lustberg and Alan L. Zegas on the brief).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
We hold that a court may not punish as contempt the refusal of criminal defense counsel at a pretrial conference to reveal the decision of defendant whether or not he will testify at trial. Maness v. Meyers, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); State v. Savage, 120 N.J. 594, 577 A.2d 455 (1990); Matter of Nackson, 114 N.J. 527, 555 A.2d 1101 (1989).
The problem arose during the May 22, 1990, pretrial conference in the case of State v. William Darby. The following exchange between court and counsel was not the first on the subject of defendant's testifying, but it was the first on the record:

*128 THE COURT: * * * Ms. Mandel, have you discussed with your client whether or not he will testify in this case and I want one of three answers from you: One, he is not going to testify; two, he is going to testify, or three, no decision has been made as to whether or not he will testify.
MS. MANDEL: Your Honor, in answer to your question, I feel that the Rules of Evidence 
THE COURT: Ms. Mandel, you will answer the question or you will be held in contempt of Court. You will respond to one of those three responses. Now, 
MS. MANDEL: Your Honor, the court is not allowing me to respond. I am attempting to respond.
THE COURT: You have three choices, Ms. Mandel. One more word without responding, I'm going to fine you $100 for being in contempt of Court and I will fine you until you do respond.
MS. MANDEL: Your Honor, I believe that the Rules 
THE COURT: You believe wrong.
MS. MANDEL: As my Constitution of the United States 
THE COURT: Okay, a second $100 in contempt of Court. Are you going to answer my question?
MS. MANDEL: I believe that the rules of the Court 
THE COURT: Another $100, $300 in contempt of Court. You have a choice to answer one of these three questions; the defendant will testify, will not testify, or you do not know whether or not 
MS. MANDEL: Your Honor, the record will reflect the prosecutor is sitting in the courtroom and I believe that he is not entitled 
THE COURT: Four hundred dollars. Now, it's another hundred dollars in contempt, Ms. Mandel.
MS. MANDEL: As a witness, it's protected by the constitution whether or not I call my client.
THE COURT: Ms. Mandel, if you don't keep quiet, you're going up another hundred dollars. All this contempt is in front of this Court. You have a simple question. Answer it.
MS. MANDEL: Your Honor, my answer is that I know whether or not I intend to call my client.
THE COURT: Will you answer my question? Is he going to testify, not testify, or you do not know. Now, there is three questions.
MS. MANDEL: Your Honor, I don't believe that I am required to answer that question.
THE COURT: All right, another hundred dollars in contempt. You're going up to $600 in contempt at this time, Ms. Mandel.
The judge's ten-page Order For Contempt, see R. 1:10-1, recites the circumstances that led up to the quoted exchange and the events occurring thereafter. In it, the Judge criticizes Ms. Mandell's conduct in numerous respects. Although the recital of events gives us a valuable insight into the atmosphere *129 in which the matter on appeal arose, it does not determine the outcome. The only conduct the judge held to be contumacious was Ms. Mandell's refusal to reveal whether her client would testify. The judge ultimately imposed a total fine of $100.
Our responsibility is to review a summary conviction for contempt "on the law and the facts," and "render such judgment and order for enforcement thereof as [is] just under the circumstances." R. 2:10-4. We consider the matter de novo on the record, and adjudicate both guilt and punishment. State v. Vasky, 203 N.J. Super. 91, 99, 495 A.2d 1347 (App.Div. 1985). De novo review is a "fail-safe" mechanism for insuring that the contempt power is not abused. In the Matter of Daniels, 118 N.J. 51, 62, 570 A.2d 416 cert. denied, ___ U.S. ___, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990).
Contempt in the presence of the court is a disobedience of the court by acting in opposition to its authority and dignity. It is any act which is calculated to, or tends to embarrass, hinder, impede, frustrate, or obstruct the court, or lessen its authority or dignity. See In re Daniels, supra, 118 N.J. at 68-69, 570 A.2d 416.
Ordinarily, it is no defense to a charge of contempt that the court order which was violated was erroneous. The person's duty is to comply or, if possible, obtain a stay, and to appeal. United States v. Mine Workers, 330 U.S. 258, 293, 67 S.Ct. 677, 695, 91 L.Ed. 884 (1947). Similarly, good motives do not excuse the intentional violation of a court order. In re Carton, 48 N.J. 9, 16, 222 A.2d 92 (1966); In re Spann, 183 N.J. Super. 62, 69, 443 A.2d 239 (App.Div. 1982). Although appeal can be a time-consuming process, the injury flowing from interim compliance with an erroneous court order is ordinarily curable.
Not so here. Where the erroneous order requires an attorney to violate the attorney-client privilege and reveal constitutionally protected information, the consequences of immediate *130 compliance cannot be reversed along with the contempt conviction. The damage will have been done.
The United States Supreme Court has adopted a rule to protect communications deserving constitutional protection. In Maness v. Meyers, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975), a witness in a civil proceeding was incorrectly ordered to answer certain questions. His lawyer advised him not to answer to avoid self-incrimination. The judge held the lawyer in contempt. The Supreme Court reversed, and ruled that, in such cases, a "precompliance review" should be available. The subject of the contempt order should be allowed to refuse compliance with an order he or she believes invades a constitutional right, and to risk an adjudication of contempt if the reviewing court holds the order to have been valid.
The Supreme Court expressly refrained from deciding if the rule applied to orders requiring breach of the attorney-client privilege, which is not grounded in the Constitution. Id. at 461, n. 8, 95 S.Ct. at 592, n. 8, 42 L.Ed.2d at 584, n. 8. Justice Stewart's concurring opinion, joined by Justice Blackmum, did say, however, that an attorney's advice to invoke a state-recognized testimonial privilege may be just as essential to a client as advice to invoke the constitutional privilege against self-incrimination. Id. at 472, 95 S.Ct. at 598, 42 L.Ed.2d at 591 (Stewart, J., concurring).
If the judge had inquired of Ms. Mandell's client whether he was going to testify, he could lawfully have refused to answer. The matter of a criminal defendant's testifying or not testifying is of constitutional dimension, State v. Savage, 120 N.J. 594, 626-628, 577 A.2d 455 (1990), and it is an absolutely necessary subject of discussion between defendant and his attorney. Id. at 629-630, 577 A.2d 455 (citing with approval State v. Bogus, 223 N.J. Super. 409, 423-424, 538 A.2d 1278 (App.Div.), certif. denied, 111 N.J. 567, 546 A.2d 497 (1988)). A criminal defendant does not have to reveal to the State any defense, strategy, or tactic except as required by specific (and *131 valid) court rule. See R. 3:11, 3:12, 3:12A. Surely a defendant is not obligated to give the State advance notice of intention to testify or not testify. The State is not entitled to that information until after it has rested, State v. Alston, 212 N.J. Super. 644, 648, 515 A.2d 1280 (App.Div. 1986), or perhaps not until just before defendant has rested. See Brooks v. Tennessee, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972). The reasons for which the court sought the information in advance in the present case related only to its own convenience. Such reasons do not weigh heavy in the balance with constitutional privileges. Cf. In re Nackson, 114 N.J. 527, 537-539, 555 A.2d 1101 (1989); In re Richardson, 31 N.J. 391, 401, 157 A.2d 695 (1960). Where, as here, the information is absolutely protected from revelation, there are no legitimate questions to consider of balancing of interests and availability of the information from other sources.
It is of no moment that, if Ms. Mandell had answered the judge's question, her answer could not have bound defendant if he later changed his mind. Neither court nor prosecutor can constitutionally demand a statement by a criminal defendant of his present intention whether or not to testify at a future trial. Defense counsel who knows defendant's intentions may therefore not be ordered to reveal that information gathered from discussions with the client.
We do not decide whether the Maness rule of pre-compliance review is available to all attorneys who assert the attorney-client privilege against an allegedly erroneous court order to reveal information. We hold, however, that pre-compliance review is available to an attorney, like Ms. Mandell, who asserts a responsibility not to reveal confidentially transmitted information which she believes is itself constitutionally protected from revelation. We further hold that an attorney who knows whether or not the client intends to testify in a future criminal trial against him possesses constitutionally protected information confidentially transmitted. The attorney may decline *132 to reveal that information to the Court and the State without committing an act of contempt.
Reversed.