719 A.2d 689

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
MARK HAWKINS, A/K/A MARSHALL ROUNDTREE,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 1, 1998—Decided November 6, 1998.

Before Judges STERN and LANDAU and BRAITHWAITE.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Jacqueline E. Turner*, Assistant Deputy Public Defender, of counsel and on the brief).

*Lee A. Solomon*, Camden County Prosecutor, attorney for respondent (*Deborah Fox*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the Court was delivered by

LANDAU, J.A.D.

On October 4, 1993, defendant Mark Hawkins was indicted in Camden County on counts of first degree robbery (*N.J.S.A.* 2C:15–1) and third degree hindering prosecution (*N.J.S.A.* 2C:29–3b(1)). In 1994, he entered a retraxit plea of guilty on the armed robbery count subject to the court's acceptance of a plea bargain in which the State was to recommend a second degree sentence of nine years with three years of parole ineligibility to run concurrently with any sentence imposed under a pending Essex County prosecution.[1]

An Essex County jury found defendant guilty of first degree attempted murder (*N.J.S.A.* 2C:11–3; 5–1); second degree aggravated assault (*N.J.S.A.* 2C:12–1b(1)); third degree unlawful possession of a weapon (*N.J.S.A.* 2C:39–5b); and second degree possession of a weapon for an unlawful purpose (*N.J.S.A.* 2C:39–4a), but his motion for a new trial was granted. Defendant then pled guilty to second degree counts of aggravated assault and possession of a weapon for an unlawful purpose, receiving concur-

---

[1] In the Essex County indictment defendant's name was given as "Marshall Roundtree".

rent sentences of ten years with five years of parole ineligibility on each count.

After the Essex County convictions, the Camden County plea proffer was rejected because the conviction in Essex County would require a conviction for the robbery charge subject to "a second Graves [Act]" sentence. *See N.J.S.A.* 2C:44-3d; *State v. Hawks,* 114 *N.J.* 359, 554 *A.*2d 1330 (1989). Defendant went to trial on the Camden indictment. The jury returned a guilty verdict on each count. A Graves Act hearing was held. As defendant was found to have used a gun in the robbery, and as defendant had also been sentenced under the Graves Act for the Essex County offense, an extended term was imposed. Defendant was sentenced on the robbery count to a fifty-year custodial term with 16 2/3 years of parole ineligibility, and to a concurrent five year term on the hindering prosecution count. The sentence was run consecutively to the term imposed in Essex County.

On appeal defendant argues:

POINT I

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S REQUEST FOR AN ADJOURNMENT SO THAT HE WOULD BE ABLE TO STAND TRIAL IN CIVILIAN CLOTHES.

POINT II

THE TRIAL JUDGE ERRED IN DENYING DEFENDANT'S MOTION FOR A MISTRIAL AFTER EVIDENCE OF OTHER CRIMES WAS PLACED BEFORE THE JURY.

POINT III

THE TRIAL JUDGE ERRED IN FAILING TO QUESTION THE JURY ABOUT THE IMPACT OF DEFENDANT'S REPEATED OUTBURSTS.

POINT IV

THE JUDGE ERRED IN FINDING THAT THE DEFENDANT USED A REAL GUN IN THE COMMISSION OF THE ROBBERY; HE WAS, THEREFORE, NOT SUBJECT TO THE GRAVES ACT.

POINT V

THE DEFENDANT'S SENTENCE IS EXCESSIVE.

We have considered these arguments in light of the briefs and record and conclude that each is without merit, *R.* 2:11-3(e)(2), warranting no extended discussion.

■ We add these comments. The victim gave a description of defendant and his unique attire to authorities immediately after the robbery. She had ample opportunity to observe him in broad daylight, and positively identified him both shortly thereafter and at the trial. Coupled with defendant's taped confession, there was such overwhelming evidence of guilt that even were there some merit in any of the arguments raised in Points I, II and III, the outcome would not have been affected. Defendant was provided with khaki pants, sweatshirt and sneakers rather than prison garb. It was not necessary to outfit him in stylish clothing, and we find no abuse of discretion in the court's refusal to further delay the trial. As to denial of the mistrial request, the limiting instructions given promptly during trial and in the later jury charge were fully adequate in this case to forestall any possibility of an unjust result. It was a reasonable exercise of discretion to deny the mistrial motion.

■ Respecting the judge's method of avoiding prejudice to defendant from his own self-serving courtroom outbursts, our review of the record satisfies us that the curative instructions were sufficient, and an appropriate exercise of discretion. Defendant's statements, some made after court warning, were either designed to evoke sympathy or to confound the judicial process. The judge made appropriate inquiry of a juror who thought his objectivity might be affected, dismissing the juror without compromising the jury. He instructed the jury appropriately. Defendant ought not be rewarded on appeal for engaging in disruptive courtroom conduct. *State v. Vasky*, 203 *N.J.Super.* 91, 98, 495 *A.*2d 1347 (App.Div.1985). *See also State v. Loftin*, 146 *N.J.* 295, 365–66, 680 *A.*2d 677 (1996) (leaving to discretion of trial judge the determination of appropriate response, based upon "feel of the case.")

■ Turning to defendant's challenge to the finding that defendant used a gun, thus implicating a Graves Act (*N.J.S.A.* 2C:43–6c) sentence, we note that the judge conducted a separate inquiry as required by *State v. Stewart*, 96 *N.J.* 596, 477 *A.*2d 300 (1984).

In so doing, a court must conclude by a preponderance of evidence that defendant possessed a gun during commission of the crime. *Stewart, supra,* at 606, 477 *A.*2d 300.

All relevant material, not only that placed before the jury during trial, may be considered. *Ibid.* Indeed, *N.J.S.A.* 2C:43–6d affords broad latitude to the court in making the Graves Act finding:

[i]n making its finding, the court shall take judicial notice of any evidence, testimony or information adduced at the trial, plea hearing or other court proceedings and shall also consider the presentence report and any other relevant information.

Here, one of the several underlying reasons given for the conclusion that a real gun was employed was defendant's confirmation of that fact during the course of a guilty plea, later withdrawn. Other factors mentioned were defendant's own statement that he "never stuck a gun to anybody before [this incident]," and the victim's description of the silver-grey gun she was confronted with, which didn't look like a toy.

■ The finding of a requisite element of a Graves Act offense may be based upon proof which would not be admissible in evidence at the defendant's trial. *State v. Wooters,* 228 *N.J.Super.* 171, 179, 549 *A.*2d 441 (App.Div.1988)(citing *Stewart, supra,* 96 *N.J.* at 606, 477 *A.*2d 300).

■ In *State v. Davis,* 96 *N.J.* 611, 619–20, 477 *A.*2d 308 (1984), the Court stated,

[a] sentencing judge may exercise a far-ranging discretion as to the sources and types of evidence used to assist him or her in determining the kind and extent of punishment to be imposed. (Citation omitted). This universal understanding of sentencing discretion is consistent with our traditional approach to the information that can and should be available generally in sentencing. Presentence materials can be placed before the sentencing tribunal without surmounting regular hurdles of evidential admissibility. Sentencing deliberations may appropriately take into account matters that would not satisfy conventional evidential standards. (Citations omitted). In short, the sentencing process should embrace an evidential inquiry 'broad in scope, largely unlimited either as to the kind of information that may be considered, or the source from which it may come.' (Citation omitted.)

Thus a judge is not bound by strict rules of evidence when considering a defendant's sentence.

According to the victim, the gun was silver-gray, flat, about the size of a person's hand, and it was not a revolver. It did not look like a toy gun.

■ In this case, the judge also had before him the testimony given at trial by the victim respecting defendant's statement to her at the time of the robbery, "I have a gun. Give me your purse or I'll shoot you." In *State v. Huff*, 292 *N.J.Super.* 185, 678 *A.*2d 731 (App.Div.1996), *aff'd o.b.*, 148 *N.J.* 78, 689 *A.*2d 723 (1997), we indicated that such a statement might be received for its truth under *N.J.R.E.* 803(b). *Id.* at 192,[2] 678 *A.*2d 731. For purposes of the Graves Act hearing and its preponderance of evidence standard, this unobjected-to evidence of defendant's own statement and his "never stuck a gun to anybody before" comment to the police, considered together with the victim's description of the gun, was alone sufficient to meet the standards laid down in *State v. Gantt*, 101 *N.J.* 573, 589–90, 503 *A.*2d 849 (1986).

It is, thus, unnecessary to resolve the issue raised by defendant as to the court's consideration of defendant's sworn testimony during his later withdrawn retraxit plea of guilt. Defendant points to *N.J.R.E.* 410 [3] in this regard. The State argues that the court correctly exercised discretion to relax *N.J.R.E.* 410 under *N.J.R.E.* 101(a)(2)(C) which permits relaxation of evidence rules in a criminal matter in which information is presented for the court's use in sentencing. As we noted above, apart from use of defen-

---

[2] *Huff* involved use of the statement for purposes of sustaining a first degree robbery, not a Graves Act sentence based on the possession of a firearm during the robbery.

[3] *N.J.R.E.* 410 provides in pertinent part:

[e]xcept as otherwise provided in this rule, evidence of a plea of guilty which was later withdrawn, of any statement made in the course of that plea proceeding, and of any statement made during plea negotiations when either no guilty plea resulted or a guilty plea was later withdrawn, is not admissible in any civil or criminal proceeding against the person who made the plea or statement or who was the subject of the plea negotiations.

dant's sworn statement at his retraxit plea hearing, there was sufficient evidence to meet the standards of *State v. Gantt, supra.*

■ Moreover, the defendant calls attention to his initial statement to police where he said he used a plastic water gun. While defendant did not so testify in the Graves proceeding, the practical thrust of defendant's argument is that the court should consider his initial statement that the weapon was a toy, but that his sworn statement at the plea proceeding that the gun was real must be ignored under *N.J.R.E.* 410. We think it would be a reasonable exercise of discretion under *N.J.R.E.* 101(a)(2)(c) to relax *N.J.R.E.* 410 during a Graves sentencing procedure, at least to rebut a contrary factual contention expressly or inferentially raised, as distinct from using the rejected plea statement as direct evidence in support of the "real gun" proposition.

If the proofs supporting the use of a real gun are considered independently of defendant's "toy" contention to police, they meet the standards of *Gantt.* If defendant's "toy gun" statement is to be weighed, then his sworn contradictory statement need not be ignored. In either event, the applicable preponderance of evidence test was here met for Graves Act purposes. Under these circumstances we uphold the Graves Act sentence. We do not address whether defendant's withdrawn plea can be used against him in other circumstances and do not hold that it can.

Finally, we are satisfied that the court's sentencing discretion was capably exercised in this case. Our judicial conscience is not shocked. *State v. Roth,* 95 *N.J.* 334, 363–364, 471 *A.*2d 370 (1984).

Affirmed.