**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2526-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANDRE HERD,

    Defendant-Appellant.

_____

Submitted March 11, 2026 – Decided May 27, 2026

Before Judges Paganelli and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 86-02-0582.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Ruth E. Hunter, Designated Counsel, on the brief).

Theodore N. Stephens II, Essex County Prosecutor, attorney for respondent (Frank J. Ducoat, Deputy Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Andre Herd appeals from the sentence imposed following his conviction for two counts of felony murder arising from a 1985 armed robbery and killing of two off-duty Essex County Sheriff's Officers. We affirm.

I.

Defendant and his co-defendants, Guyron Walker, Edward Craig, and Alan Rogers, conspired to rob the V&J Bar in Newark. On November 25, 1985, Walker and Craig executed the robbery, Rogers was the getaway driver, and defendant was the lookout. During the robbery, Sergeant Nathaniel Taylor and Detective Robert Walls of the Essex County Sheriff's Department attempted to intervene. Walker and Craig fatally shot both officers.

Following trial in November 1986, a jury found defendant guilty of second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2 (count one); first-degree armed robbery, N.J.S.A. 2C:15-1 (count two); felony murder, N.J.S.A. 2C:11-3(a) (counts three and four); third-degree possession of a firearm, N.J.S.A. 2C:39-5(b) (count five); and second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count six). The court merged the convictions on counts one, two, and six with three, four, and five and sentenced defendant to two consecutive life sentences with an aggregate parole ineligibility period of sixty years.

A-2526-23

In 1988, we affirmed defendant's convictions on direct appeal but vacated his sentence and remanded for resentencing in accordance with State v. Yarbough, 100 N.J. 627 (1985). State v. Herd, No. A-1643-86 (App. Div. June 7, 1988). We retained jurisdiction to review the sentence imposed by the trial court on remand. Id. at 9. On September 23, 1988, the trial court imposed the same sentence, this time explaining its reasoning for imposing consecutive sentences. See State v. Herd, No. 1643-86 (App. Div. Jan. 10, 1989) (slip op. at 2). In January 1989, we affirmed defendant's sentence "substantially for the reasons stated by the sentencing court." Id. at 3. The Supreme Court denied defendant's petition for certification. State v. Herd, 117 N.J. 56 (1989).

Defendant filed his first petition for post-conviction relief in November 1993, which the trial court denied and we affirmed. State v. Herd, No. A-5312-93 (App. Div. Feb. 8, 1996). The Supreme Court denied defendant's petition for certification. State v. Herd, 144 N.J. 587 (1996). Defendant also filed a petition for a writ of habeas corpus in the United States District Court, "which was dismissed with prejudice as untimely and denied a certificate of appealability." State v. Herd, No. A-4582-13 (App. Div. March 9, 2016) (slip op. at 2).

In 2016, defendant filed a self-represented "petition to dismiss" his sentence based on the United States Supreme Court's decision in Miller v.

Alabama, 567 U.S. 460 (2012), holding mandatory life without parole for juvenile homicide offenders violated the Eighth Amendment's prohibition on "cruel and unusual punishments." Ibid.

The trial court denied defendant's petition for relief, finding it was procedurally barred under Rule 3:22-5 because we had expressly reviewed and affirmed defendant's sentence on direct appeal, holding his sentence was consistent with our state's penal code pursuant to State v. Roth, 95 N.J. 334 (1984). Ibid. We affirmed, noting "[o]ur sentencing scheme . . . does not contain an inflexible mandate directing the sentencing court to impose a life sentence without the possibility of parole to a juvenile," as was the case in Miller. Id. at 3.

However, on February 13, 2017, the Supreme Court granted defendant's petition for certification and "summarily remanded" the matter to the Law Division "for resentencing in light of this Court's holding in State v. Zuber, 227 N.J. 422 (2017)." State v. Herd, 229 N.J. 135 (2017).

On remand, the trial court heard testimony and on January 9, 2024, resentenced defendant. The court found applicable aggravating factors one (nature and circumstances of the offense), N.J.S.A. 2C:44-1(a)(1); two (gravity and seriousness of harm inflicted on the victim), N.J.S.A. 2C:44-1(a)(2); three

(risk of reoffense), N.J.S.A. 2C:44-1(a)(3); six (extent of defendant's prior criminal record and seriousness of prior offenses), N.J.S.A. 2C:44-1(a)(6); eight (commission of crime against a law-enforcement officer), N.J.S.A. 2C:44-1(a)(8); and nine (need for deterrence), N.J.S.A. 2C:44-1(a)(9).

The court also found applicable mitigating factors eight (defendant's conduct was the result of circumstances unlikely to recur), N.J.S.A. 2C:44-1(b)(8); nine (character and attitude of defendant indicate he is unlikely to commit another offense), N.J.S.A. 2C:44-1(b)(9); eleven (excessive hardship resulting from imprisonment), N.J.S.A. 2C:44-1(b)(11); and fourteen (defendant was younger than twenty-six years of age at the time of the offense's commission), N.J.S.A. 2C:44-1(b)(14).

The court next analyzed the Miller factors in consideration of the Court's holding in Zuber. Defendant presented the expert testimony of Megan A. Perrin, Ph.D., M.P.H.[1] After taking into consideration Dr. Perrin's testimony and arguments of counsel, the court found applicable factors one (chronological age and its impetuosity); two (family home and environment); and five (possibility of rehabilitation). It rejected factors three (circumstances of the homicide offense) and four (incompetencies of youth).

---

[1] MPH is an acronym for Master of Public Health.

5

The court afforded the first factor "moderate weight." Although defendant was "just shy" of eighteen at the time of the offense, his previously committed offenses "not only informed him of but subjected him to the risks and consequences of criminal activity . . . . He was not a first[-]time youth offender facing consequences of a significant magnitude for a single mistake." Rather, "his role here reflected a degree of maturity and planning." As to the second factor, the court found defendant's family environment and upbringing were "traumatic." The family was at times physically violent, moved frequently, and was of limited means. Defendant also suffered from cognitive and behavioral issues.

In rejecting the third factor, the court found defendant was "no stranger to criminal activity, robbery in particular, and the evidence demonstrated the much larger role -- some might say the primary role -- he played in the planning and execution of this robbery." Regarding the fourth factor, the court found "neither [defendant] nor Dr. Perrin can point to any specific facts beyond the generalities of youth that support any . . . specific incapacity that resulted in his charging or inability to participate in his own defense. In fact, he took the stand and testified at his own trial."

The court afforded the fifth factor "slight weight." It recognized

6

defendant had earned "numerous certificates relevant to rehabilitation and skills building" and the "numerous support letters from family and community." However, the court also considered defendant's prison disciplinary record, listing twenty-seven infractions for various offenses, including threats of bodily harm, disruptive conduct, refusal to obey, and unauthorized possession of contraband items spanning from 1991 to 2019. Most significant was a 2017 infraction for possession of a weapon. His institutional record also makes note of "eight inmates from whom [defendant] is to be kept separate." The court found the record demonstrated defendant "is still prone to violation of rules."

The court also considered the Yarbough factors in consideration of State v. Torres, 246 N.J. 246 (2021). It determined consecutive sentences to be appropriate because these "murders were two separate crimes directed against two separate victims, each of whom was shot twice." "Concurrent sentences would, in fact, award him a free crime." Additionally, it determined the resentence to be fair because defendant now faces an aggregate parole ineligibility term of forty-seven years rather than sixty, making him eligible for parole at sixty-two rather than seventy-seven as previously sentenced. The court concluded this approximately fifteen-year reduction "provides for a meaningful opportunity for release, while balancing the need to fairly address the crimes

7

committed as [State v. ]Comer[, 249 N.J. 359 (2022),] directed."

After extensive consideration of all applicable factors, the court, as in the prior sentence, merged the conviction on counts one, two, and six into three, four, and five. On count three, the court sentenced defendant to a thirty-year prison term subject to a twenty-seven-year period of parole ineligibility. On count four, the court sentenced defendant to a consecutive thirty-year prison term subject to a twenty-year period of parole ineligibility. On count five, the court sentenced defendant to a concurrent five-year prison term. The court also assessed the appropriate fees and monetary penalties for each offense.

Defendant timely appealed, raising the following arguments:

> POINT I
>
> THE RESENTENCING OF JUVENILE OFFENDER ANDRE HERD TO A [FORTY-SEVEN]-YEAR PAROLE BAR WHEN HE WILL BE [SIXTY-FOUR] YEARS OLD DOES NOT PROVIDE HIM WITH "A MEANINGFUL OPPORTUNITY FOR RELEASE." BECAUSE HE IS ALMOST [FIFTY-SEVEN] YEARS OLD, IT IS CRITICAL THAT HE AGAIN BE RESENTENCED IN ORDER TO GIVE HIM THAT REQUIRED, MEANINGFUL OPPORTUNITY.
>
> POINT II
>
> THE COURT ABUSED ITS DISCRETION IN DECIDING THE MILLER FACTORS, THE AGGRAVATING/MITIGATING FACTORS, AND THE CONSECUTIVE SENTENCE.

A-2526-23

POINT III

[DEFENDANT]'S RIGHTS TO DUE PROCESS WERE VIOLATED WHEN THE COURT RELIED ON TESTIMONY AT THE CODEFENDANTS' TRIALS AT WHICH [DEFENDANT] DID NOT TAKE PART.

II.

"We apply a deferential standard of review to the sentencing court's determination, but not to the interpretation of a law." State v. Bolvito, 217 N.J. 221, 228 (2014). Our review is limited to deciding "whether there is a 'clear showing of abuse of discretion.'" Ibid. (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)).

> [We] must affirm the sentence of a trial court unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not "based upon competent credible evidence in the record;" or (3) "the application of the guidelines to the facts" of the case "shock[s] the judicial conscience."
>
> [Ibid. (second alteration in original) (quoting Roth, 95 N.J. at 364-65).]

We do not substitute our judgment for that of the sentencing court. State v. Fuentes, 217 N.J. 57, 70 (2014) (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). See State v. Francisco, 471 N.J. Super. 386, 426 (App. Div. 2022) ("Generally, an appellate court should defer to the sentencing court's factual findings and should not 'second-guess' them." (quoting State v. Case, 220 N.J.

9

49, 65 (2014))).

In recent years, sentencing schemes regarding juvenile offenders have evolved. In <u>Miller</u>, the United States Supreme Court extended to homicide offenses by juveniles the ban on life-without-parole sentences for juveniles for non-homicide offenses established in <u>Graham v. Florida</u>, 560 U.S. 48 (2010). 567 U.S. at 479. It held "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." <u>Ibid.</u> The Court outlined five primary factors sentencing courts are to consider:

> Mandatory life without parole for a juvenile[:]
>
> [1] precludes consideration of his chronological age and its hallmark features -- among them, immaturity, impetuosity, and failure to appreciate risks and consequences.
>
> [2] It prevents taking into account the family and home environment that surrounds him -- and from which he cannot usually extricate himself -- no matter how brutal or dysfunctional.
>
> [3] It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him.
>
> [4] Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth -- for example, his inability to deal with police officers or prosecutors

A-2526-23

(including on a plea agreement) or his incapacity to assist his own attorneys.

[5] And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

[Comer, 249 N.J. at 387 (alterations in original) (quoting Miller, 567 U.S. at 477-78).]

However, the Court noted it does not "foreclose a sentencer's ability to make that judgment in homicide cases" but rather "require[s] it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Miller, 567 U.S. at 480.

In Zuber, our Supreme Court extended Miller, holding sentencing courts should evaluate the Miller factors when a juvenile faces "a sentence that is the practical equivalent of life without parole." 227 N.J. at 447.

In Comer, the Court held N.J.S.A. 2C:11-3(b)(1), which requires juveniles convicted of felony murder to serve at least thirty years before becoming eligible for parole, violated the prohibition against cruel and unusual punishment enumerated in Article I, Paragraph 12 of our State Constitution. 249 N.J. at 401. However, instead of invalidating the statute, the Court allowed juveniles to petition for sentence review after serving twenty years to "ensure fairness" and "facilitate review" of a juvenile's sentence. Id. at 404.

A-2526-23

In <u>Yarbough</u>, the Court adopted criteria as general sentencing guidelines for concurrent or consecutive-sentencing decisions:

(1) there can be no free crimes in a system for which the punishment shall fit the crime;

(2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;

(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

(a) the crimes and their objectives were predominantly independent of each other;

(b) the crimes involved separate acts of violence or threats of violence;

(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

12

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and

(6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses.

[100 N.J. at 643-44.]

When imposing a sentence and analyzing the above factors, a court's assessment of overall fairness of the sentence must be explicit in the record, particularly where a consecutive sentence is imposed. See Torres, 246 N.J. at 272; Fuentes, 217 N.J. at 70-74 (mandating "a qualitative analysis of the relevant sentencing factors on the record"); N.J.S.A. 2C:43-2(e) (requiring a statement of reasons on the record).

After careful review of the record, we are satisfied the sentencing court did not abuse its discretion in sentencing defendant to consecutive thirty-year terms with an aggregate parole ineligibility period of forty-seven years. The court thoroughly analyzed all applicable sentencing factors, including the traditional aggravating and mitigating factors, together with those enumerated under Miller, Zuber, and Yarbough. It also assessed the overall fairness of the sentence under Comer and explained his reasoning for imposing consecutive

sentences. This reasoning was adequately supported by evidence in the record, including trial testimony, Dr. Perrin's testimony, defendant's own statements, his family's statements, school records, and prison disciplinary records.

Lastly, we conclude the court did not violate defendant's due-process rights in relying on the trial testimony of his co-defendants in the sentencing proceedings. See State v. Hawkins, 316 N.J. Super. 74, 80 (App. Div. 1998) ("[a] sentencing court may exercise a far-ranging discretion as to the sources and types of evidence used to assist him or her in determining the kind and extent of punishment to be imposed") (alteration in original) (quoting State v. Davis, 96 N.J. 611, 619-20 (1984)); State v. Randolph, 210 N.J. 330, 344 (2012) ("when resentencing has been ordered, all current information relevant to an appropriate appraisal of the factors should be considered") (quoting State v. Towey, 244 N.J. Super. 582, 593-94 (App. Div. 1990)).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2526-23